UNITED STATES of America,

v.

Mark Garrett BROWN, Defendant.

No. 99 CR. 621(JSR).

United States District Court,
S.D. New York.

Oct. 11, 1999.

Roberto Finzi, Assistant U.S. Attorney, for plaintiff.

Yuanchurg Lee, Legal Aid Society, Federal Defender Division, for defendant.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

On June 16, 1999, defendant Mark Garrett Brown was indicted for possession of a stolen 1989 Acura in violation of 18 U.S.C. § 2313 (Count One), possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k) (Count Two), and possession of a prohibited firearm in violation of 26 U.S.C. § 5861(e) (Count Three). Brown subsequently moved to sever the trial of Count One from that of Counts Two and Three and to suppress all physical evidence and statements previously taken from him.

Following an evidentiary hearing on September 21, 1999,[1] the Court ruled that

---

1. In connection with the suppression hearing,

the Government moved to preclude defense

Count One must be severed from Counts Two and Three pursuant to Rule 8(a), Fed.R.Crim.P., and Rule 14, Fed. R.Crim.P. *See* September 21, 1999 Transcript ("Tr.") at 90–91. The Court also declined to suppress the evidence on several of the grounds argued by defendant but reserved decision on other grounds. Specifically, the Court, for the reasons stated from the bench, held that on the facts of this case introduction into evidence of defendant's statements made at the police station was not barred by the failure to give him *Miranda* warnings when he made prior statements at his apartment, *see* Tr. at 90, and that the search of his apartment did not exceed the scope of the warrant, *see id.* at 98. However, the Court reserved decision as to whether the search warrant was issued without probable cause and whether the police's "no-knock" entry in executing the warrant violated the defendant's constitutional and statutory rights. For the reasons set forth below, the Court now finds that the defendant has failed to sustain these other grounds, and consequently the Court denies defendant's motion to suppress.

The warrant here at issue was issued by Judge Robert Raciti of the Bronx Criminal Court, not only on the sworn affidavit of Police Officer Quiles but also the live testimony of both Quiles and the confidential informant in the case. In his sworn testimony before Judge Raciti, the confidential informant, after stating that he had been inside defendant's apartment on two occasions in the past week, provided a detailed description of the apartment and its contents. Among other things, the informant testified that the defendant had five or six guns in the apartment, including a sawed-off shotgun and TEC–9 machine pistol, which he kept in a dresser drawer along with ammunition. Officer Quiles testified that although he had no information as to the informant's general reliability *vel non*, the information that the informant had provided about the apartment, such as its location and the color of its door, had proven accurate. On the basis of this and other testimony, Judge Raciti signed a search warrant for "all weapons and firearms" at 1006 Gerard Avenue, Apartment 11–E (defendant's apartment) and authorized a "no-knock" entry to the premises to avoid endangering the safety of the police officers and others.

The following day, the police executed a "no-knock" entry of defendant's apartment, handcuffing all adults and conducting an emergency sweep of the apartment. In the course of the ensuing search, police officers recovered, *inter alia*, five firearms (including the sawed-off shotgun that

counsel from cross-examining one of the Government's witnesses, Officer Eladio Quiles, concerning what another district judge had determined to be "serious inconsistencies" in Quiles's sworn testimony in another case. *See United States v. Kiyuyung*, 1999 WL 435143, at *6 (S.D.N.Y. June 25, 1999). In so moving, the Government relied on the Second Circuit's decision in *United States v. Cruz*, 894 F.2d 41 (2d Cir.1990), which upheld "as within [the court's] discretion" a district court's refusal to admit at trial for purposes of impeaching a Government witness a transcript from an unrelated sentencing hearing in which another judge had found that the witness was not credible. *Id.* at 42–43. In so ruling, the Court of Appeals stated that "In the absence of any connection between the subject of [the witness's] testimony in [the sentence hearing] and his testimony in the case at bar, it cannot be said that the [sentencing judge's] finding as to the [witness's

lack of credibility] is relevant in any way to a resolution of the issues in [the trial]." *Id.* at 43. The Government interprets this language to mean that such cross-examination must be excluded as a matter of law, on the ground of irrelevancy. But such a reading not only would be contrary to the plain meaning of Fed.R.Evid. 608(b)(1) ("in the discretion of the court" to allow use of extrinsic evidence in cross-examination of a witness "concerning the witness' character for truthfulness or untruthfulness"), but also is directly contrary to the holding in *Cruz* itself, which rejected Cruz's contention that the district judge had excluded the proffered transcript as a matter of law and determined, instead, that he had excluded it in the exercise of his broad discretion. *Id.* at 43. Exercising the same broad discretion in the instant case, the Court permitted the impeachment of Officer Quiles based on the prior testimony.

forms the basis for Counts Two and Three of the indictment), hundreds of rounds of ammunition (including live and spent shell casings for rifles, shotguns and machine guns), drug residue and paraphernalia, and tools and keys designed for the theft of automobiles.

■ On these facts, Brown, in addition to the arguments already disposed of on September 21, 1999, contends that no warrant should have issued because there was only limited corroboration of the information the confidential informant had provided and insufficient evidence of the informant's general credibility or past veracity. The situation here presented differs, however, from the more customary situation in which the judicial officer issuing the warrant has no opportunity to hear directly from the confidential informant. Here, Judge Raciti, having had the opportunity to hear the informant's live testimony, observe his demeanor, and put questions to him, found him to be credible. That conclusion, coupled with the informant's detailed testimony, provided Judge Raciti with a sufficiently substantial basis for concluding that probable cause existed to believe that contraband would be found in defendant's apartment. *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Smith,* 9 F.3d 1007, 1012 (2d Cir.1993).

■ Defendant's other remaining argument is that the "no-knock" entry was unlawful. . It is true that the Fourth Amendment (as well as 18 U.S.C. § 3109) ordinarily requires that police officers knock on the door and announce their identity and purpose before attempting forcible entry. *See Richards v. Wisconsin,* 520 U.S. 385, 387, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). However, this requirement may give way "under circumstances presenting a threat of physical violence" or "where police officers have reason to believe that evidence would likely be destroyed if advance notice were given." *Id.* at 391, 117 S.Ct. 1416. The Government here contends that the former exception applies because the sawed-

off shotgun and the TEC–9 machine pistol posed special threats to the searching officers' safety.

■ Defendant responds that this is tantamount to the kind of *per se* exception to the knock-and-announce requirement that the Supreme Court rejected in *Richards,* where it held, instead, that courts must determine on a case-by-case basis whether a no-knock entry is justified. 520 U.S. at 394, 117 S.Ct. 1416. Additionally, several courts of appeals have held that the mere presence of firearms, absent other evidence indicating a danger to the officers' safety, is insufficient to justify a no-knock entry *per se. See, e.g., United States v. Moore,* 91 F.3d 96, 98–99 (10th Cir.1996); *United States v. Bates,* 84 F.3d 790, 795–96 (6th Cir.1996).

On the other hand, none of those cases involved such dangerous firearms as here present, *see Moore,* 91 F.3d at 98 (confidential informant told police that suspects were "armed with an unknown type of firearm"); *Bates,* 84 F.3d at 796 (police told there was a handgun inside the apartment). Indeed, while a handgun might commonly be owned by a lawful and nonviolent person, federal law outlaws possession of most sawed-off shotguns and TEC–9 machine pistols because they are easy to conceal, extremely dangerous, and particularly suited to close-quarters combat. Accordingly, the Government argues, the presumptively unlawful possession of such particularly dangerous weapons raises a special threat to the officers' safety that warrants a "no-knock" entry.

■ In the instant case, however, the Court need not decide whether such circumstances are sufficient to justify a no-knock entry because it finds that, in any event, the officers here acted in good-faith reliance on the no-knock authorization in the warrant itself. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) Although there are few decisions concerning the applicability of *Leon*'s "good-faith" exception to a provi-

sion in a search warrant authorizing a no-knock entry, such authority as exists suggests its applicability, *see, e.g., United States v. Carter,* 999 F.2d 182, 185–87 (7th Cir.1993); *United States v. Moore,* 956 F.2d 843, 850–51 (8th Cir.1992). Indeed, the Supreme Court hinted as much in *Richards,* stating that the "practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause can be demonstrated ahead of time." 520 U.S. at 396 n. 7, 117 S.Ct. 1416.

In any event, the more general principles underlying *Leon* support its applicability to the officers' conduct in this case. Here the officers, having reasonably requested a no-knock entry based on their concern about the number and, especially, the dangerous kinds of weapons in defendant's apartment, reasonably relied on Judge Raciti's decision to allow them to do so. Even assuming *arguendo* that Judge Raciti should have required more particularized information about the defendant before approving the "no-knock" entry, *cf. United States v. Spinelli,* 848 F.2d 26, 30 (2d Cir.1988), suppressing evidence under these circumstances would not serve the purpose of the exclusionary rule, which is designed "to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon,* 468 U.S. at 916, 104 S.Ct. 3405.

In response, defendant argues that Judge Raciti's approval was legally irrelevant, since "in determining the lawfulness of [a no knock] entry ... we may concern ourselves only with what the officers had reason to believe at the time of their entry." *Ker v. California,* 374 U.S. 23, 40–41 n. 12, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) (Clark, J., plurality). Closer scrutiny, however, shows that Justice Clark only meant that, notwithstanding the presence or absence of provisions in a search warrant, officers need (and ought) not blind themselves to what they have subsequently learned. Here, however, the defendant does not allege that, subsequent to obtaining the warrant, the officers had learned any new or additional facts that would have caused a reasonable officer to ques-

tion the need for a no-knock entry. Rather, the officers' fears about the threat to their physical safety was the same at the "time of entry" as it was when Judge Raciti issued the warrant. Under these circumstances, the police officers' reliance on the no-knock warrant was "objectively reasonable," *Leon,* 468 U.S. at 922, 104 S.Ct. 3405, and no suppression is required.

Accordingly, for the reasons stated here and from the bench on September 21, 1999, the Court hereby denies defendant's motion to suppress and grants defendant's motion to sever Count One from Counts Two and Three. Trial of Count One will commence at 9 a.m. on October 18, 1999, or as soon thereafter as the matter can be reached, and will be followed promptly by trial on Counts Two and Three.

SO ORDERED.