UNITED STATES of America,

v.

Darian COOK.

No. 03 Cr. 469(SCR).

United States District Court,
S.D. New York.

Feb. 6, 2004.

Jacob A. Buchdahl, Assistant United States Attorney, New York, NY, for Plaintiff.

Joseph Vita, Joseph A. Vita, Esq. Port Chester, NY, for Defendant.

## MEMORANDUM DECISION AND ORDER

ROBINSON, District Judge.

## I. *INTRODUCTION:*

### A. FACTUAL HISTORY:

On January 24, 2003, Detective Frank Sarbaci of the Newburgh Police Department executed an affidavit in support of a search warrant for 56 William Street, Newburgh, New York ("January 24th Warrant"), where Darian Cook (the "Defendant") operated Miss Cook's Deli, from which the Government alleges that he sold narcotics. The affidavit was presented to and approved by Newburgh City Court Judge Jeanne Patsolas. That search warrant was executed on January 29, 2003 and the following items were recovered: (a) 15 grams of "crack" cocaine, (b) 3.5 grams of cocaine, (c) a paper bag of marijuana, (d) a sawed-off shotgun, (e) shotgun shells, (f) $5,981.50 in cash and (g) paperwork in the name of the Defendant. The Defendant was in the store at the time of the search and was taken into custody thereafter. On the evening of January 29, 2003, Lieutenant Santo Centamore of the Newburgh Police Department executed an affidavit in support of a second search warrant for 23C Alpine Drive, Wappingers Falls, New York ("January 29th Warrant"), which was presented to and approved by Orange County Supreme Court Justice Peter Patsolas. That search warrant was executed that evening and the following items were recovered: (a) 272 grams of "crack" cocaine, (b) 290 grams of cocaine, (c) 2 grams of marijuana, (d) a .380 semiautomatic

handgun, (e) a 12–gauge, double-barrel shotgun, (f) ammunition, (g) a ballistic vest, (h) a digital scale with drug residue, and (i) paperwork in the name of the Defendant. The Government alleges that during the early morning hours of January 30, 2003, after his arrest, the Defendant waived his *Miranda* rights and admitted that the narcotics and weapons seized at the two locations belonged to him.

### B. Procedural History:

The Defendant has been charged with 21 U.S.C. § 812, 841(a)(1) & (b)(1)(A) (Possession with Intent to Distribute Cocaine Base) and 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm) and has made a motion asking for this Court to (1) suppress certain physical evidence seized from (a) 56 William Street, Newburgh, New York and (b) 23C Alpine Drive, Wappingers Falls, New York; (2) to suppress post-arrest statements of the Defendant; and (3) to order the Government to produce certain material, including a witness list, case-in-chief exhibits, Jencks Act material, *Brady/Giglio* material and Fed.R.Evid. 404(b) evidence, which motion and accompanying memorandum of law were filed by the Defendant's original counsel, Michael Keesee, Esq. After the date of that filing, Mr. Keesee was replaced as defense counsel by Samuel Braverman, Esq. Mr. Braverman filed a supplemental motion accompanied by an additional memorandum of law on September 29, 2003, which purports to "expand and amplify" the arguments made by Mr. Keesee (collectively Mr. Keesee's filings and Mr. Braverman's filings are referred to herein as "Defendant's Motion"). In addition to the arguments included in the Keesee filings, the Braverman filings include a request for a *Franks* hearing. The Government filed a response to the Defendant's Motion on October 6, 2003 ("Government's Response"). The Government's Response replies to the De-

fendant's Motion and also makes a request for reciprocal discovery pursuant to Fed. R.Crim.P. 16(b)(1)(A) & (B).

## II. *ANALYSIS:*

### A. Search Warrants:

The legal standard for determining whether a search warrant application is supported by probable cause is well established. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court held that the " task of the issuing magistrate is simply to make a practical, common-sense decision whether given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates* at 238, 103 S.Ct. 2317. Furthermore, a probable cause determination by a neutral and detached magistrate is entitled to substantial deference and doubts should be resolved in favor of upholding the search warrant. *United States v. Rosa*, 11 F.3d 315, 326 (2d Cir.1993).

### (1) January 24th Warrant:

The Defendant argues that the search warrant obtained for 56 William Street lacked probable cause because (1) it was based almost entirely on statements of a confidential informant ("C–1"), an informant of no known reliability, and (2) the Detective making the affidavit did not offer information of illegal activity based upon his personal knowledge.

The facts of this case are analogous to the facts in *United States v. Brown*, 69 F.Supp.2d 518 (S.D.N.Y.1999). In that case, a New York City Police Officer obtained a search warrant for the suspect's apartment based upon the statement of a confidential informant who "had been inside defendant's apartment on two occasions in the past week, [and] provided a

detailed description of the apartment and its contents." *Brown* at 519. In *Brown,* the police officer admitted that he had no information as to the informant's "general reliability," but the information the informant provided regarding the location and description of the defendant's apartment was accurate. *Id.* at 519. The warrant was issued in *Brown* by a New York Criminal Court judge, who relied upon a sworn affidavit from the police officer and live testimony from both the police officer and the confidential informant. *Id.* at 519. In the decision, Judge Rakoff noted that those facts differed from the customary situation where a judge does not have an opportunity to hear the informant's testimony. *Id.* Due to the fact that the judge had the opportunity to "hear the informant's live testimony, observe his demeanor, and put questions to him" he was able to find him credible. *Id.* at 520. That conclusion combined with the detailed testimony of the informant and the affidavit of the police officer, provided the judge with "a sufficiently substantial basis for concluding that probable cause existed to believe that contraband would be found in the defendant's apartment." *Id.* at 520 (citing *Gates* at 238–39, 103 S.Ct. 2317). The Second Circuit has affirmed the view that a face-to-face informant is more reliable than "an anonymous tipster." *See e.g. United States v. Walker,* 7 F.3d 26, 30 (2d Cir.1993); *United States v. Salazar,* 945 F.2d 47, 50–51 (2d Cir.1991).

In the current case, an affidavit was submitted in support of the search warrant by Detective Frank Sarbaci of the City of Newburgh Police Department, which affidavit was based in large part on information obtained from C–1. The affidavit provided that C–1 (a) had been in the Defendant's store numerous times and had observed the Defendant engaged in narcotics sales from the store; (b) he had seen the Defendant in possession of a sawed-off shotgun; (c) had observed the Defendant carrying the supply of cocaine and shotgun with him when he came and left from the store; (d) had been inside the Defendant's store two days prior, at which time he observed the Defendant with a substance alleged to be cocaine; and (e) described two vehicles that the Defendant used to transport the cocaine and shotgun.

Detective Sarbaci, from his own knowledge (a) confirmed that the Defendant operated the store, and (b) confirmed the vehicles identified by C–1 were registered to the Defendant, this corroborative information gave credence to C–1's reliability, even though he was "a person of no known reliability." Additionally, Detective Sarbaci determined that the Defendant had at least two prior felony narcotics convictions, which although not a basis by themselves, do provide "additional evidence" to substantiate C–1's information. *United States v. Wagner,* 989 F.2d 69, 73 (2d Cir.1993). The Second Circuit has held that prior convictions are "a relevant consideration in determining probable cause." *United States v. Rowell,* 903 F.2d 899, 903 (2d Cir.1990). In the current case, the Defendant's two prior criminal convictions for the same type of offense, sale of narcotics, are relevant to determining probable cause and supporting the allegations of C–1.

The January 24th Warrant was issued by Judge Jeanne Patsolas after reviewing the affidavit by Detective Sarbaci regarding his personal knowledge and the information from C–1. Furthermore, Detective Sarbaci and C–1 appeared before Judge Patsolas and she had the opportunity to hear C–1's live testimony, observe his demeanor and ask relevant questions. With respect to the warrant, Judge Patsolas, "a neutral and detached magistrate", was able to review the police officer's affidavit and question both the police officer and C–

1. *See Rosa* at 326. She was in the best position to review the credibility of the affiant and C–1 in order to determine whether there was sufficient probable cause. Judge Patsolas's determination is "entitled to substantial deference." *Id.* Accordingly, in the case at bar, this Court finds that there was probable cause for the issuance of the search warrant for 56 William Street.

## (2) January 29th Warrant:

▮ The Defendant makes similar arguments in favor of the suppression of evidence based on a lack of probable cause with respect to the January 29th Warrant for 23C Alpine Drive as he did in connection with the January 24th Warrant.[1] The January 29th Warrant was based on much of the same information as the January 24th Warrant; however, it also incorporated (a) the results of the search performed at 56 William Street, specifically it discussed the discovery of the drugs and weapon described by C–1, (b) the results of an investigation of the Defendant by Detective Donald Campbell and Detective Jason Albrechtsen of the Newburgh Police Department, and (c) the statements of a second confidential informant ("C–2"), whose information corroborated the information provided by C–1.

Additionally, at oral argument the Defendant argued that even if sufficient probable cause had been established for the January 24th Warrant, there was insufficient probable cause for the January 29th Warrant. The January 29th Warrant, which incorporates by reference and attachment the January 24th Warrant, makes the following allegations based upon the police investigation and the information provided by C–1 and C–2, which reasonably support Justice Patsolas's finding of probable cause: (1) that the Defendant brings a supply of "crack" and cocaine and a sawed-off shotgun to 56 William Street each morning and leaves with the same at the end of each day (January 24th Warrant, Page 4); (2) the Defendant brings enough cocaine to the store to sell, but keeps a larger supply at another location (January 29th Warrant, Page 5); (3) if the Defendant runs out of narcotics, he will leave the store and return with another supply (Id.); (4) the Defendant's girlfriend, Janet Pope ("Ms. Pope"), also sells "crack" cocaine from 56 William Street (Id.); (5) Ms. Pope's then current New York State driver's license listed an address of 23C Alpine Drive, Wappingers Falls; (6) on numerous occasions, vehicles registered to the Defendant were observed at Ms. Pope's address including the nights of January 27th and January 28th (Id. at Page 5 and 6); (7) on two separate occasions prior to the events in question Ms. Pope received traffic summons while driving vehicles registered to the Defendant (Id. at Page 5); (8) Ms. Pope is the listed owner of "Ms. Cook's Deli" at 56 William Street (Id.); (9) it is reasonable to believe that Ms. Pope lives at 23C Alpine Drive and that the Defendant is staying at this address with Ms. Pope (Id. at Page 6); and (10) based on the deponent's extensive law enforcement experience[2] it is common practice for individuals in the narcotics business "to attempt to conceal their place of residence to insulate themselves from

---

1. The apartment at 23C Alpine Drive was the residence of the Defendant's girlfriend, Janet Pope, where the Defendant would occasionally spend the night.

2. Lieutenant Santo Centamore of the Newburgh Police Department was the deponent of the January 29th Warrant. In the warrant Lieutenant Centamore states that he has over thirty years of experience as a police officer and detective and has conducted hundreds of investigations targeting those in the narcotics business.

police detection and to maintain proceeds from the sales of controlled substances as well as quantities of controlled substances and firearms at their residences and to not sell controlled substances from their residences but from a second location, again to insulate their main supply of controlled substances and proceeds from police detection." (Id.)

As set forth above, the information from C-1, C-2 and the police investigation was corroborative and formed a strong basis for finding probable cause and Justice Patsolas's judgment should be given deference by this Court. As set forth above, this Court determined that the January 24th Warrant was valid; therefore, the January 29th Warrant, which contains all of the same information is presumptively valid. However, as set forth above, the January 29th Warrant includes even more evidence to establish probable cause. The Defendant does not cite any facts or case law that could support his motion to suppress in light of the facts of this case. Accordingly, this Court finds that there was probable cause for the issuance of the search warrant for 23C Alpine Drive.

### (3) Poisonous Fruit:

Having determined that the January 24th Warrant was valid, this Court does not need to address the Defendant's alternative argument that the evidence seized pursuant to the January 29th Warrant was the fruit of the poisonous tree because it relied heavily on the January 24th Warrant.

There was probable cause for both the January 24th Warrant and the January 29th Warrant. The Defendant's motion to

suppress the evidence recovered during the searches of 56 William Street and 23C Alpine Drive is denied.

### B. DEFENDANT'S POST-ARREST STATEMENTS:

The Government alleges that the Defendant made incriminating statements to law enforcement officials in the early morning hours of January 30, 2003, after his arrest on January 29, 2003. The Defendant argues that such statements should be suppressed. The Defendant's primary argument for suppression is that the post-arrest statements are also the fruit of the poisonous tree because they are the direct result of the arrest of the Defendant, which occurred at the time of the execution of the search warrant at 56 William Street on January 29, 2003, pursuant to the January 24th Warrant, which the Defendants claim was invalid for lack of probable cause. As set forth above, this Court has determined that both the January 24th Warrant and January 29th Warrant were supported by probable cause and were valid. Therefore, the "fruit of the poisonous tree" argument fails and the Defendant's motion to suppress on such grounds is denied.

▮▮ Additionally, in the Supplemental Notice of Motion filed by Mr. Braverman, it is alleged that "the post-arrest statements of Mr. Cook [are] based upon the improper and insufficient warnings given to the defendant under *Miranda* and its progeny[.]" However, the Defendant's Motions do not advance any legal or factual basis in support of the motion to suppress the statements for a *Miranda* violation.[3]

---

**3.** Although the argument was not raised in any of the Defendants various motion papers, at oral argument the Defendant's attorney briefly suggested that his client's *Miranda* waiver was not valid because he was intoxi-

cated at the time. This assertion fails for a number of reasons. First, as a threshold matter, such a claim must be made in an affidavit by a defendant, not an oral assertion by the defendant or his attorney. *See e.g. Mathurin,*

█ It is well established by *Miranda* and its progeny that the Fifth Amendment protects a defendant against compelled self-incrimination and that before a suspect properly may be subjected to custodial interrogation, he must be informed that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to have counsel present. *See, e.g., Miranda v. Arizona,* 384 U.S. 436, 467–71, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A defendant seeking a *Miranda* suppression hearing must make more than a "bald assertion" that the statement in question was involuntary. *United States v. Mathurin,* 148 F.3d 68, 69 (2d Cir.1998). If the defendant's request for a hearing is not accompanied by a sufficient specification of the factual basis for the characterization, the district court is not required to hold a suppression hearing. *Mathurin* at 70. More particularly, an attorney's affidavit, absent personal knowledge is insufficient to justify a suppression hearing. *See United States v. Gillette,* 383 F.2d 843, 848 (2d Cir.1967). In order to sustain a suppression motion, when such motion has been opposed by a sworn affidavit from a law enforcement officer, the defendant must submit a statement to the contrary. *United States v. Martinez,* 634 F.Supp. 1144, 1147 (S.D.N.Y.1986); *see also United States v. Amery,* 2002 WL 31027514, at *1, 2002 U.S. Dist. LEXIS 16974, at *1 (S.D.N.Y. Sept. 10, 2002).

In the case at bar, none of the papers submitted as the Defendant's Motion, by either Mr. Braverman or Mr. Keesee, sets forth a sufficiently specific factual basis for how the *Miranda* warnings were allegedly "improper and insufficient." As discussed above, the Defendant must do more than make the "bald assertion" of impropriety or insufficiency in order to sustain a request for a suppression hearing. Mr. Braverman's affidavit by itself does not set forth the basis for a factual dispute. Additionally, the Defendant submitted an affidavit in support of the Defendant's Motion; however, it is significant that the Defendant does not allege a *Miranda* violation in that affidavit. The only statement in the Defendant's affidavit pertinent to the current discussion of his post-arrest statements is that: "It is alleged by the Government that I made certain post-arrest statements, and the Government intends

*Gillette* and *Martinez* discussed in below. Second, even assuming *arguendo* that said threshold had been satisfied, which is not the case here, evidence of a defendant's intoxication does not preclude a finding of a knowing and intelligent waiver. *See e.g., Avincola v. Stinson,* 60 F.Supp.2d 133, 160 (S.D.N.Y. 1999) (valid waiver despite physical manifestations of drug use by defendant at the time *Miranda* warnings were given); *United States v. DiLorenzo,* 1995 WL 366377, at *8, 1995 U.S. Dist. LEXIS 8454, at *8–9 (S.D.N.Y. June 19, 1995) (defendant knowingly and intelligently waived Miranda rights despite his claim that he was under the influence of alcohol, where he stated that he understood rights and signed form confirming that he understood). More specifically, a claim that a defendant was exhausted or suffering from the effects of an intoxicant is not, in the absence of coercive law enforcement activity, sufficient to characterize his confession as involuntary. *DiLorenzo,* 1995 WL 366377, at *8, 1995 U.S. Dist. LEXIS 8454, at *8–9 (citing *Graves v. United States,* 878 F.Supp. 409, 414, (N.D.N.Y.1995)). The issue of "intoxication is relevant to the inquiry only to the extent that it would make the petitioner more susceptible to mentally coercive police tactics." *Graves* at 414 (citations and internal quotations omitted). In this case, the Defendant has not alleged any coercive action by the law enforcement officers. The single, bare assertion made by the Defendant's attorney at oral argument, but not in any of the written papers, is that he was intoxicated at the time he executed the *Miranda* waiver form. This bare assertion is insufficient to warrant a suppression hearing.

to use same on its case-in-chief against me." (Defendant's Affidavit, ¶ 7).

Although the Defendant has not offered any support that his *Miranda* rights were violated, and his request for a suppression hearing fails on its face, it should be noted that Exhibit C of the Government's Response is a "*Miranda* Form", signed by the Defendant, Detective Campbell and Special Agent Andrew Boss of the Bureau of Alcohol, Tobacco and Firearms. On the *Miranda* Form, (1) the Defendant acknowledges that he was given his *Miranda* warning and that he understood his rights pursuant to such warning, (2) Detective Campbell acknowledges that he read the Defendant his Miranda rights, and (3) Special Agent Boss acknowledges that he witnessed Detective Campbell read the Defendant his rights. As indicated above, the Defendant has not offered any evidence, or even allegations, that his *Miranda* warning was invalid or otherwise inapplicable. Accordingly, the Defendant's motion to suppress the post-arrest statements is denied.

### C. *FRANKS* HEARING:

■ The Defendant argues that he is entitled to a *Franks* hearing because of alleged factual inaccuracies in the affidavit for the January 24th Warrant. In *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." In order for the Defendant's Motion for a *Franks* hearing to succeed, the movant must give the

Court substantial reasons to doubt the truth of the affidavit at issue. As the Supreme Court explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171, 98 S.Ct. 2674.

"Allegations that amount to negligence or innocent mistake do not constitute the required showing. The focus is not on whether a mistake was made, but rather the intention behind the mistake." *United States v. Markey*, 131 F.Supp.2d 316, 324 (D.Conn.2001). If there is an inaccuracy in the affidavit based upon information provided by a third party, a *Franks* hearing is inappropriate because "*Franks* is implicated only when the false statement is made by, or reckless disregard is that of, the affiant. There is no right to a hearing when the challenge is to information provided by an informant or other source." *Markey* at 324.

The only assertion made by the Defendant in support of his request for a *Franks* hearing is that C–1 was "wrong about substantial facts relating to criminal activity." However, the Defendant does not, or is unable to, point out which "substantial facts" C–1 was wrong about. Further, pursuant to *Markey*, the Defendant does

not have a right to a *Franks* hearing based on a challenge to information provided by C–1; he would have to show that Detective Sarbaci made a false statement or acted with reckless disregard for the truth, which the Defendant has not alleged, never mind proven. In the case at bar, the Defendant has not alleged any deliberate falsehood or reckless disregard for the truth and has not offered any legal or factual support for the allegations that he does make. The Defendant's request for a *Franks* hearing is denied.

### D. DEFENDANT'S DISCOVERY MOTIONS:

In addition to the suppression arguments set forth above, the Defendant has made the following discovery requests of the Government:

#### (1) *Brady* Material:

The Defendant's Motion seeking *Brady* material is denied. It is well established that pre-trial motions for discovery pursuant to *Brady* should be denied when the Government has made a good faith representation to the Court and defense counsel that it recognizes and has complied with its *Brady* disclosure obligations. *See e.g., United States v. Birkett,* 1999 WL 689992, 1999 U.S. Dist. LEXIS 13475 (S.D.N.Y. 1999); *United States v. Perez,* 940 F.Supp. 540, 553 (S.D.N.Y.1996); *United States v. Schwimmer,* 649 F.Supp. 544, 549 (E.D.N.Y.1986); *United States v. Massino,* 605 F.Supp. 1565, 1581 (S.D.N.Y.1985), rev'd on other grounds, 784 F.2d 153 (2d Cir.1986). In the case at bar, the Government has made a good faith representation and the Defendant's Motion is denied.

#### (2) *Giglio*/3500 Materials:

■ As to witness statements (3500 materials) and impeachment material (*Giglio* [4]

materials), the Defendant "recognize[s] that the Court cannot compel the government to make such production prior to trial." Despite such "recognition", the Defendant has requested that such materials be provided at least thirty (30) days in advance of trial, in order to prevent delays caused by the Defendant's need to prepare for cross-examination during trial. *Id.* at 9–10. The Jencks Act specifically prohibits the Court from ordering the pretrial disclosure of witness statements. *United States v. Coppa,* 267 F.3d 132, 145 (2d Cir.2001). It is well established that the Defendant's request for the production of 3500 and *Giglio* material is premature at this time. *See e.g. Coppa* at 145. The Defendant does not have a "constitutional right to have early disclosure of *Giglio* and 3500 material." *United States v. Nunez,* 2001 WL 91708, at *8 (S.D.N.Y. Feb.1, 2001). The Government is not required to disclose such material until the witness is called to testify. *United States v. Gutierrez–Flores,* 1994 WL 558034, 1994 U.S. Dist. Lexis 14460 (S.D.N.Y.1994) (citing *United States v. Higgs,* 713 F.2d 39, 44 (3d Cir.1983), cert. denied 464 U.S. 1048, 104 S.Ct. 725, 79 L.Ed.2d 185 (1984)).

The material requested by Defendant, conceivably, will assist in impeaching the Government's witnesses, which may include confidential informants. The Government has offered, consistent with practice in the Southern District of New York, to make the *Giglio* material available to the Defendant at the time it provides the 3500 material, either (a) at least one day prior to the date the witness is called to testify on direct examination, or (b) sufficiently in advance of each Government witness's testimony. The Defendant has not offered any legal or factual basis for why the *Giglio* and 3500 materials should be provided sooner. Therefore, the Defendant's request to have such materials pro-

---

4. *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

vided at least 30 days prior to trial is denied, but the Government shall disclose such materials sufficiently in advance of the witness testimony to allow the defense counsel to prepare for cross-examination.

(3) Fed.R.Evid. 404(b) evidence:

■ With respect to the Fed.R.Evid. 404(b) evidence, the Defendant contends that the "government is required to 'provide reasonable notice in advance of trial of the general nature of any such evidence it intends to introduce at trial.'" The Defendant is asking for notice period of at least thirty (30) days to give the defense a chance to review and analyze such evidence. Alternatively, the Government has proposed disclosing such material two calendar weeks before trial. The determination of when the Government should turn over this material is a question of what is "reasonable" and the Government has not offered any evidence suggesting that it would be unreasonable for the Government to turn over such information thirty (30) days in advance of trial. The Defendant's request that notice of any 404(b) evidence intended to be used at trial be turned over thirty (30) days prior to trial is granted.

(4) Case–in–Chief Exhibits:

■ The Defendant argues that the Court should order the Government to identify its trial exhibits well in advance of trial. The Defendant relies upon *United States v. Upton*, 856 F.Supp. 727, 746–48 (E.D.N.Y.1994) and *United States v. Turkish*, 458 F.Supp. 874, 881 (S.D.N.Y.1978) for this position. The *Upton* and *Turkish* courts both found that because the Government had turned over tens of thousands of documents, the Government needed to clarify which documents would be relied upon and referred to by the witnesses called during trial. The Government has cited numerous, recent District Court decisions where such requests have been denied, even when the document dis-

closure has been voluminous. *See e.g. United States v. Reddy*, 190 F.Supp.2d 558, 571 (S.D.N.Y.2002); *United States v. Carrington*, 2002 WL 31496199 at \*2 (S.D.N.Y. Nov.7, 2002).

The Defendant in this case has not made a showing, or even argued, that the disclosure of documents has been voluminous or that the Defendant's review of all of the documents would be so burdensome that it is necessary to require the Government to designate which items will be introduced. The Defendant's request that the Court order the Government to identify its trial exhibits in advance is denied.

(5) Witness List:

■ Finally, the Defendant's Motion requests a copy of the Government's witness list. The Defendant does not support this request with legal or factual arguments. The Second Circuit has held that "Fed. R.Crim.P. 16 does not require the Government to furnish the names and addresses of witnesses." *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir.1990). The Defendant is only entitled to the disclosure of the Government's witness list if he makes "a specific showing that the disclosure [is] both material to the preparation of his defense and reasonable in light of the circumstances surrounding his case." *United States v. Cannone*, 528 F.2d 296 (2d Cir. 1975).

In this case, the Defendant has not made any showing whatsoever that the disclosure of the Government's witness list is either "material" or "reasonable" with respect to his defense preparation. Therefore, the Defendant's request for production of the Government's witness list is denied.

**E. GOVERNMENT'S RECIPROCAL DISCOVERY:**

The Government has made a reciprocal discovery request pursuant to Fed.

R.Crim.P. 16(b)(1)(A) & (B) with respect to certain materials and the Defendant has not responded to the Government's request. Pursuant to the Federal Rules of Criminal Procedure, if a defendant makes a request for certain Documents and Objects, under Fed.R.Crim.P. 16(a)(1)(E) and/or Examinations and Tests, under Fed.R.Crim.P. 16(a)(1)(F), and the Government complies with such request, the Government is entitled to reciprocal disclosure by the Defendant pursuant to Fed. R.Crim.P. 16(b)(1)(A) & (B). To the extent the Defendant has made a request, which has been complied with, the Defendant shall provide the Government with reciprocal discovery pursuant to Fed. R.Crim.P. 16(b)(1)(A) & (B).

### III. *CONCLUSION:*

The Court finds that:

A. The Defendant's motion to suppress the evidence resulting from the search of 56 William Street is denied because the search warrant was supported by sufficient probable cause.

B. The Defendant's motion to suppress the evidence resulting from the search of 23C Alpine Drive is denied because the search warrant was supported by sufficient probable cause.

C. The Defendant's Motion to suppress his post-arrest statements is denied because (a) they were not the fruit of a poisonous tree and (b) there has been no showing that his *Miranda* rights were violated.

D. The Defendant's request for a *Franks* hearing is denied because the requisite allegations of an intentionally false statement or reckless disregard for the truth by the affiant have not been satisfied.

E. With respect to the Defendant's discovery requests:

(1) the request for *Brady* material is denied;

(2) the request for *Giglio* and 3500 materials is premature, but such materials shall be provided sufficiently in advance of trial;

(3) the request for the Rule 404(b) evidence to be disclosed thirty (30) days prior to trial is granted;

(4) the request for the Government's case-in-chief exhibits is denied; and

(5) the request for the Government's witness list is denied.

F. The Government's reciprocal discovery request is granted, to the extent that the Defendant has already made the requisite requests and the Government complied with such requests.

It is so ordered.