859 A.2d 1112

Robert DAVIS

v.

STATE of Maryland.

Damont Adams

v.

State of Maryland.

Nos. 59, Sept. Term 2002, 36, Sept. Term, 2002.

Court of Appeals of Maryland.

Oct. 21, 2004.

**396**

Stacy W. McCormack, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE *, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, C.J.

The Petitioners, Robert Davis and Damont Adams, were arrested, charged with, and convicted of, possession of marijuana with intent to distribute and a handgun violation. The arrests, charges and convictions followed the search of 4011

---

\* Eldridge, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Boarman Avenue, in Baltimore City, by officers of the Baltimore City Police Department, pursuant to a search and seizure warrant. The warrant incorporated by reference the affidavit of the police officer affiants, O'Ree and Brickus. In that affidavit, they indicated that a "rushed or no knock forced entry" of the premises would be required. The issue that this case presents is whether, where there is no statute so providing, a judge is authorized to issue a "no-knock" warrant, on the basis of which the police may make a "no-knock" entry to execute a search and seizure warrant.[1] The Court of Special Appeals affirmed the judgments of conviction, holding both that a "no-knock" entry was justified by the exigent circumstances detailed in the search and seizure warrant, thus affirmatively validating the propriety of the issuance of a "no-knock" warrant, and that, in any event, the "good faith" exception to the exclusionary rule "saved" the admissibility of the evidence.[2] We shall reverse.

After conducting an investigation, police officers O'Ree and Brickus applied for, and obtained, a search and seizure warrant for the Boarman Avenue premises, the petitioners,[3] and a

---

1. As we shall see, *infra*, neither party directly presented the issue we have identified. Rather, they argued in their briefs about the sufficiency of the factual predicate for the issuance of the "no-knock" warrant, thus assuming the authority of the judge to issue it. The State, therefore, alternatively, asked us to decide whether the "good faith" exception to the exclusionary rule applies to render the evidence seized pursuant to a "no-knock" warrant for which the factual basis was inadequate, admissible, nevertheless.

2. Although the petitioners were tried together in the Circuit Court for Baltimore City, their appeals were heard by two different panels of the Court of Special Appeals. In *Davis v. State*, 144 Md.App. 144, 797 A.2d 84 (2002), the court decided the case on both grounds. In the case of Adams, however, although implicitly recognizing a judge's authority to issue a "no-knock" warrant, the court, in an unreported opinion, declined to decide whether the affidavit made a sufficient showing to justify the issuance of such a warrant in that case, preferring to rest its decision instead on the "good faith" exception to the exclusionary rule.

3. In the police officers' affidavit, the petitioner Robert Davis is referred to as "Meatball," whom they describe as a black male, "6' 1," 175

black Nissan Sentra, which they alleged was driven by the petitioners and associated with their operation. The application for the search warrant, which included the officers' affidavit, enumerated the applicants' considerable experience,[4] and detailed their investigation,[5] including the conclusions they

---

pounds, in his twenties." The petitioner Damont Adams was also referred to in the affidavit, as "Biggie."

4. In the case of Officer O'Ree, that experience consisted of five (5) years as a police officer, three with the Baltimore City Police Department, one hundred eighty four (184) hours of specialized training in narcotic enforcement, more than three hundred (300) narcotic/drug arrests, resulting in numerous convictions and writing or being the affiant on more than seventy (70) search and seizure warrants "for illegal controlled dangerous substances, money, guns and related material."

Officer Brickus's experience consisted of approximately ten (10) years as a police officer, completion of the Police Academy and Roll Call and In–Service Training as to various controlled dangerous substances, more than one thousand (1000) narcotics arrests and participation in the investigation, preparation and execution of more than two hundred fifty (250) search and seizure warrants, resulting in the recovery of narcotics and related paraphernalia.

5. Specifically, they averred:

"During the month of February 2000, Your Affiants Chris O'Ree and Jonathan Brickus of the North Western District Enforcement Unit met with a confidential source. We believe this confidential source to be extremely reliable and has provided information that has been corroborated. The source provided Your Affiant [sic] with information outlining a drug organization that sells marijuana primarily in the 5100 Block of Park Heights Ave. This confidential source is a user of marijuana and is familiar with pricing, packaging, and the appearance and effects of it.

"The confidential source advised Your Affiant [sic] that the leaders of the group are two guys known as 'Meatball' and 'Biggie'. The confidential source advised that the male known, as 'Meatball' is a 6'1 175lb male in his twenties. The confidential source advised Your Affiant [sic] that 'Biggie' [sic] name is Damont. The confidential source advised Your Affiant [sic] that 'Biggie' and 'Meatball' have a room at 4011 Boarman Ave., on the second floor. The confidential source advised that they store their main supply of marijuana in that room and bring small amounts to the 5100 block of Park Heights Ave. for street sales in their black late model two door Nissan Sentra.

"The confidential sources then pointed out to Your Affiants the dwelling known as 4011 Boarman Ave. as the dwelling where the marijuana was stored. We then went to the 5100 block of Park Heights Ave. where the sources then pointed out 'Meatball' and 'Biggie'.

"The 5100 block of Park Heights Ave. is well known to the police and citizens for a high level of marijuana sales. Your Affiant [sic] then interviewed 'Biggie' and identified him to be Damont Adams. The male known as 'Meatball' was also interviewed. They both were located in the 5100 block of Park Heights Ave. Damont Adams and 'Meatball' both stated that they drive a black Nissan Sentra. During the interview, the two could not provide a valid reason for being in the area. After the interview was complete your Affiants observed the two drive away in the late model black two door Nissan Sentra Maryland registration # FXF894.

"The confidential source advised that he/she was inside of 4011 Boarman Ave. in the extremely recent past and observed large amounts of marijuana inside the dwelling. The source stated that on the first floor of the dwelling there is a large screen television. Your Affiants were able to observe a large screen television on the first floor through an open front door.

"During the First week of February 2000 your Affiants have observed 'Meatball' and Damont Adams on several occasions in the 5100 block of Park Heights Ave.

"Your Affiants then contacted a reliable confidential registered informant NWD # 398. NWD# 398 advised that two black males fitting the description of 'Meatball' and Damont Adams, that drives [sic] a black Nissan Sentra, are living in the 4011 Boarman Ave. NWD# 398 advised that at 4011 Boarman Ave., several people live there and share the house for communal use.

"Confidential Informant NWD# 398 has provided Your Affiant [sic] information that directly resulted in over fifteen search and seizure warrants, which resulted in the seizure of thousands of dollars worth of 'crack' cocaine, numerous handguns, shot guns and U.S. currency. NWD# 398 has proven to be extremely reliable, and the information that he/she has provided has proven to be accurate and correct. NWD# 398 is familiar with the packaging, pricing and sales techniques of marijuana, crack cocaine, cocaine, heroin and illegal firearms. NWD# 398 has provided your Affiant [sic] information on drug operations in the North Western District that has been corroborated.

"A check of the Baltimore City Police Department Juvenile arrest records revealed that Damont Adams has been arrested three times in the past two years for C.D.S. violations.

"On 4 February 2000 at approximately 9:00 am Your Affiant [sic] observed the Nissan Sentra with the tag # FXF894 parked in front of 4011 Boarman Ave.

"Based on information provided from an extremely reliable confidential source of the detailed information on 'Meatball' and Damont Adams's marijuana sales and storage in 4011 Boarman Ave. [sic] The corroborated information of the source. [sic] Your Affiant [sic] believes that 'Meatball' and Damont Adams are storing large amounts of marijuana in 4011 Boarman Ave. Your affiant [sic] prays of the issuance of a search and seizure warrant for the address of 4011 Boarman Ave., the vehicle known as a two door Nissan Sentra tag # FXF894, a black male known as 'Meatball' and Damont Adams for violations of the Maryland C.D.S. laws."

reached as a result of that investigation. Then, the applicants submitted:

"The prior experience of your Affiant [sic] indicates that narcotic/drug dealers/users have, carry, and use Firearms to protect their operations. This protection is both from the Police and other drug dealers/users who may try to seize the drugs or moneys gained from the operation. These Firearms include handguns, rifles and shotguns. These weapons allow the drug dealer/user to operate openly and freely; also enabling them to retaliate against anyone they feel threatened by. The possession of these weapons is an extension of the narcotic operation and/or conspiracy being conducted. Due to the nature of the evidence you [sic] Affiant [sic] is seeking to seize in this investigation, specifically Article 27 Section 275–302 of the Annotated Code of Maryland. Your Affiant [sic] must gain entry quickly and safely into the dwelling. If entry is stalled or delayed the controlled dangerous substance can easily and quickly be destroyed. Therefore, Your Affiant [sic] will attempt to gain entry by the rush or No–Knock forced entry. This will enable the Entry Team to recover the evidence intact and provide members of the entry team with a margin of safety from weapons, which may be on the scene."

A judge issued the search and seizure warrant. Although the warrant did not do so explicitly, no express provision to that effect being included in the warrant, because it "incorporated by reference" the affidavit of Officers O'Ree and Brickus, which stated their intention "to gain entry by the rush or No–Knock forced entry," the warrant implicitly authorized a "no-knock entry." In executing the warrant, the police neither knocked, nor announced their presence or purpose; rather, they gained entry, as they stated that they intended to do, through the use of force. The petitioners were found in a second floor bedroom, in which various weapons and drug paraphernalia also were found. In a refrigerator in that same room, the officers recovered a large ziplock baggie containing 60 smaller baggies of suspected marijuana.

The petitioners moved, pre-trial, to suppress [6] the evidence seized during the search. Their argument was directed to, and challenged, the sufficiency of the showing the affiants made to justify the issuance of the warrant, which the petitioners characterized as a "no-knock" warrant. More particularly, the petitioners argued, *inter alia*, that the facts alleged in the affidavit submitted in support of the search and seizure warrant were insufficient to justify a "no-knock entry." [7] The Circuit Court denied the motion to suppress. It held that, in light of their wealth of experience in the area of narcotics drug enforcement, as detailed in their affidavit, the police officers' determination that a no-knock entry was required was not "irrational." It reasoned:

"Somewhat more vexing is the consideration whether the warrant itself provides say a sufficient basis for a no-knock forced entry. The cases, which have been discussed by the defense, and reviewed by the Court, largely involve situations in which law enforcement officers were confronted with situations which post entry were determined either to rise to the level of exigency permitting no-knock entry or failed to meet that standard, and thus require suppression

"No cases were found in which the issue presented was, in this context, in which there was pre-raid approval for a no-knock entry on a set of facts which essentially recite the officers' general and specific experience in law enforcement, from which they extrapolate the need, as they perceive it, for a no-knock entry. It is, of course, well-settled in search and seizure law that the issuing judge is permitted to rely upon the experience of law enforcement officers and the conclusions which reasonably flow from that experience in making the probable cause determination.

---

6. Counsel for petitioner Davis made the motion, which petitioner Adams joined.

7. The petitioners also argued that the application did not establish probable cause for the search. The petitioners have not appealed the Circuit Court=s denial of their motion on that basis. The issue, therefore, is not before this Court.

"I see no reason to depart from that pattern when the examination is not the presence or absence of probable cause, but is instead the existence of exigencies meriting a no-knock entry. It is, in any event, a close[ ] question for the Court.

"However, crediting the affiant's experience which involves hundreds of narcotics arrests, extensive training, and considerable experience in narcotics law enforcement, I cannot conclude that their conclusion with respect to the likeliness of firearms on the property is an irrational one."

Both of the petitioners timely appealed. In separate opinions, by different panels of the court, the Court of Special Appeals affirmed the judgments of the Circuit Court. With regard to petitioner Adams, the court, in an unreported opinion, declined to consider whether the affidavit submitted in support of the application for the search and seizure warrant sufficiently alleged facts to authorize a "no-knock" warrant. Instead, it held that "even if the application for the search warrant did not set forth legally sufficient exigent circumstances justifying a 'no-knock' warrant, the evidence seized should not be suppressed under the good faith exception to the exclusionary rule." The court explained:

"Although the good faith exception to the exclusionary rule has not been considered by the appellate courts of this State in the context of a 'no knock' warrant, facially valid but later determined to have been issued on an insufficient showing of exigent circumstances, other courts have applied it in that context. *U.S. v. Carter,* 999 F.2d 182, 184–87 (7th Cir.1993); *U.S. v. Moore,* 956 F.2d 843, 851 (8th Cir.1992); *State v. Hughes,* 589 N.W.2d 912, 915–16 (N.D.1999). We find those decisions persuasive and accordingly affirm Adams's convictions and sentences."

Petitioner Davis's conviction was also affirmed, as previously indicated. In that case, which the intermediate appellate court reported, *see Davis v. State,* 144 Md.App. 144, 797 A.2d 84 (2002), however, the court determined that the affidavit contained sufficient facts to establish a reasonable suspicion of the then existence of exigent circumstances and, thus, to

permit a judge to make a pre-entry finding that a "no-knock" entry onto the premises was justified. *Id.* at 152–58, 797 A.2d at 89–93. Pointing to the experience of the affiant officers, as set forth in their affidavit, the court credited their conclusion that those involved in the drug trade often are dangerous and carry weapons and that drugs are easily and quickly destroyed when entry onto the premises is delayed or stalled. The court further observed that the affidavit indicated that large amounts of drugs had been seized as a result of information supplied by one of their sources, the reliable confidential registered source, that several people resided in the dwelling, and that the petitioner's co-defendant Adams had several previous arrests for drug violations," [8] *id.* at 158, 797 A.2d at 93, all of which, it concluded, supported its holding. Alternatively, the intermediate appellate court held that, even if the no-knock entry were illegal in that case, the good faith exception to the exclusionary rule applied to render the evidence seized in the case admissible. *Id.* at 159, 797 A.2d at 93. The court reasoned:

"Other courts have applied the good faith exception to cases involving the issuing of a no-knock search warrant. *See United States v. Tisdale,* 195 F.3d 70 (2nd Cir.1999); *United States v. Carter,* 999 F.2d 182 (7th Cir.1993); *United States v. Moland,* 996 F.2d 259 (10th Cir.1993); *United States v. Moore,* 956 F.2d 843 (8th Cir.1992); *United States v. Gonzalez,* 164 F.Supp.2d 119,(D.Mass.2001); *United States v. Rivera,* 2000 WL 761976, 2000 U.S. Dist. Lexis 7997 (D. Maine 2000); *United States v. Brown,* 69 F.Supp.2d 518 (S.D.N.Y.1999); *United States v. Tavarez,* 995 F.Supp. 443 (S.D.N.Y.1998); *State v. Van Beek,* 591 N.W.2d 112 (N.D.1999); *State v. Eason,* 245 Wis.2d 206, 629 N.W.2d 625 (2001). We agree with those decisions.

\* \* \* \*

"[E]ven if we had concluded that Judge Sweeney should not have authorized a no-knock entry in this case, we would not

---

8. The arrests attributed to the petitioner Adams were, as we have seen, juvenile arrests.

reverse appellant's conviction. Suppressing evidence under these circumstances would not serve the purpose of the exclusionary rule, which is designed to deter police misconduct rather than to punish police for the errors of judges and magistrates. When the police officers follow the proper course of conduct by seeking a no-knock search warrant, the good faith exception applies."

*Id.* at 160, 797 A.2d at 94.

This Court granted the petitions for certiorari in both cases, *Adams v. State,* 369 Md. 570, 801 A.2d 1031 (2002); *Davis v. State,* 370 Md. 268, 805 A.2d 265 (2002), to address whether the intermediate appellate court correctly resolved the issues they presented.

## II.

In this Court, petitioner Davis challenges, once again, the sufficiency of the factual support offered to justify the issuance of a "no-knock" warrant. He argues that, taken as a whole, the factual averments simply are insufficient, under *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), to justify use of a "no-knock" entry to execute the subject warrant. In that case, the petitioner notes, the Supreme Court held that police officers may not rely on general allegations that narcotics investigations, *per se,* present circumstances that warrant no-knock entries, 520 U.S. at 388, 117 S.Ct. at 1417, 137 L.Ed.2d at 620, and that, in each case, the police and/or the court, as the case may be, must consider whether the facts of that particular case constitute an exigency sufficient to warrant a no-knock entry. Id. at 395, 117 S.Ct. at 1421, 137 L.Ed.2d at 625.

Davis characterizes the invocation, by the applicants for the "no-knock" warrant, of their experience to establish that the petitioners, the suspected marijuana dealers, "ha[d], carr[ied] and use[d] Firearms to protect their operations" as "a conclusory statement that drugs and weapons go hand-in-hand" and submits that that use of experience, to create a reasonable suspicion that "[i]f entry is stalled or delayed the controlled

dangerous substance can easily and quickly be destroyed" results in a "considerable overgeneralization," of the kind against which the *Richards* Court cautioned. See 520 U.S. at 393, 117 S.Ct. at 1421, 137 L.Ed.2d at 623. Nor does petitioner Davis agree that the additional factors identified by the *Davis* court provide the requisite showing:

> "Even with this additional information, the affidavit fails to establish the requisite reasonable suspicion that exigent circumstances existed to justify not knocking and announcing. Rather, the 'large amount of drugs' supports the petitioner's position that the danger of destruction of evidence was insignificant, the fact that 'several people resided in the dwelling' was not alleged to create any extra danger, and unlike the defendant in *Wynn [v. State,* 117 Md.App. 133, 699 A.2d 512 (1997) ], the fact that Adams had 'several arrests for drug violations' does not in any way suggest that Adams had a propensity for violence."

Both of the petitioners deny that the "good faith" exception to the warrant requirement is applicable to save the admissibility of the evidence in this case. This is so, they submit, because the police could not have acted objectively and reasonably because the offer of conclusory statements based on unsupported assumptions, rather than case specific and particularized facts, has been rejected, by *Richards,* as a sufficient basis for establishing a reasonable suspicion of the existence of exigency warranting a "no-knock" entry. As petitioner Adams puts it, "to apply the 'good faith' exception to a no-knock authorization based on an affidavit's categorical statements about drug dealers is to create just another prohibited *per se* rule."

The State, of course, does not agree. On the contrary, it proffers three arguments as to why this Court, as did the Court of Special Appeals, should affirm the judgment of the Circuit Court. With respect to the sufficiency of the factual allegations in support of a "no-knock" entry, it argues, pointing to the factors the intermediate appellate court identified in *Davis,* that they were of "details specific to the case and supported the inference that knocking and announcing could

pose a danger to police officer or risk the destruction of evidence." Also significant to the State, is the fact that authorization for the "no-knock" entry was sought from a judicial officer, in the request for the search and seizure warrant, as to which a different, more deferential, standard of review from that applicable to an on the scene determination by the officers applies. Application of that standard to the case *sub judice*, the State submits, properly resulted in the trial judge upholding the no knock entry.

Referencing the test of objective good faith set out in *United States v. Leon*, 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 3420 n. 23, 82 L.Ed.2d 677, 698 (1984), "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization," the State argues that the applicants "relied in good faith on the warrant's authorization to conduct a no-knock entry, and thus, the evidence seized is admissible pursuant to the good faith exception to the exclusionary rule."

Finally, the State submits that, assuming a violation of the knock-and-announce rule, the evidence would be admissible pursuant to the independent source and inevitable discovery doctrines.[9]

---

9. In *State v. Lee*, 374 Md. 275, 821 A.2d 922 (2003), this Court rejected the same argument in the context of a search and seizure warrant executed in violation of the knock and announce requirement. In that case, the State argued both that cocaine the police recovered in executing a search warrant without first knocking and announcing their presence was, nevertheless, admissible because it would have been discovered inevitably when the officers entered the home pursuant to the valid warrant and that the warrant was an independent source for the cocaine. Although recognizing the close interrelationship between inevitable discovery and independent source, we noted their analytical distinction:

"The inevitable discovery doctrine applies where evidence is not actually discovered by lawful means, but inevitably would have been. Its focus is on what would have happened if the illegal search had not aborted the lawful method of discovery. The independent source doctrine, however, applies when the evidence actually has been discovered by lawful means. Its focus is on what actually happened—was the discovery tainted by the illegal search?"

## III.

The Fourth Amendment of the United States Constitution provides:

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Its clear and unequivocal purpose is to protect against unreasonable searches and seizures and, because it recognizes " 'the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic,' " *Oliver v. U.S.*, 466 U.S. 170, 178, 104 S.Ct. 1735, 1741, 80 L.Ed.2d 214, 224 (1984) (quoting *Payton v. New York,* 445 U.S. 573, 601, 100 S.Ct. 1371, 1387, 63 L.Ed.2d 639, 660 (1980)). *See also, Wilson v. Layne,* 526 U.S. 603, 610, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818, 827 (1999) (" 'the house of every one is to him as his castle and fortress, as well for his defence against injury and violence as for his repose,' " quoting *Semayne's Case,* 77 Eng. Rep. 194, 195 (K.B.1603)); *Unit-*

---

374 Md. at 292, 821 A.2d at 932 (quoting *United States v. Markling,* 7 F.3d 1309, 1318 n. 1 (7th Cir.1993)). We rejected the State's argument. As to inevitable discovery, we said:

"To apply the inevitable discovery rule ... whenever there is a valid warrant, to render admissible, any evidence seized in execution of that warrant in violation of the knock and announce rule is, in effect, to create a blanket exception to that rule for all cases involving valid search warrants, ... precisely what *Richards* prohibits. This is exactly what the High Court has said we may not do."

*State v. Lee,* 374 Md. at 303, 821 A.2d at 938. As to independent source, we concluded:

" '[W]e reject the Government's position because it would completely emasculate the knock-and-announce rule. As stated *supra,* the requirement that officers reasonably wait is a crucial element of the knock-and-announce rule. To remove the exclusionary bar from this type of knock-and-announce violation whenever officers possess a valid warrant would in one swift move gut the constitution's regulation of how officers execute such warrants.' "

*Id.* at 303, 821 A.2d at 938 (quoting *U.S. v. Dice,* 200 F.3d 978, 986 (6th Cir.2000)). *Lee* controls the case *sub judice,* insofar as the inevitable discovery and independent source arguments are concerned.

*ed States v. United States Dist. Ct. for Eastern Dist. of Mich.,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752, 764 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"), it thus protects the rights of citizens to "retreat into his [or her] own home and be free from unreasonable governmental intrusion." *Kyllo v. United States,* 533 U.S. 27, 31, 121 S.Ct. 2038, 2041, 150 L.Ed.2d 94, 100 (2001) (quoting *Silverman v. United States,* 365 U.S. 505, 511, 81 S.Ct. 679, 683, 5 L.Ed.2d 734, 739 (1961)). Interpreted as generally *in pari materia* with the Fourth Amendment, *Dua v. Comcast Cable,* 370 Md. 604, 622, 805 A.2d 1061, 1072 (2002); *Scott v. State,* 366 Md. 121, 139, 782 A.2d 862, 873 (2001); *Gahan v. State,* 290 Md. 310, 319–21, 430 A.2d 49, 53–54 (1981), Article 26 of the Maryland Declaration of Rights has a like, though perhaps not identical, purpose and effect, to prohibit unlawful searches and seizures, *Gadson v. State,* 341 Md. 1, 21, 668 A.2d 22, 32 (1995); *Givner v. State,* 210 Md. 484, 492–93, 124 A.2d 764, 768–69 (1956), and is subject to a like, but not identical, interpretation. It provides:

"all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

## A.

Unlike many States, whose legislatures have enacted such laws, e.g. *State v. Pierson,* 238 Neb. 872, 472 N.W.2d 898, 900–901 (1991) (citing Neb.Rev.Stat. § 29–411, which permits entry without notice when "the judge or magistrate issuing a search warrant has inserted therein that the officer executing it shall not be required to give such notice"); *United States v. Tisdale,* 195 F.3d 70, 72 (2nd Cir.1999) (noting that New York's no-knock statute, N.Y.C. P.L. § 690.35(4)(b)(i) permits the issuance of such a warrant when it is shown that "the property sought may be easily and quickly destroyed or disposed of"); *State v. Utvick,* 675 N.W.2d 387, 394 (N.D.2004) ("No-knock

search warrants are authorized under N.D.C.C. § 19–03.1–32(3)" [10]; *State v. Lee,* 863 P.2d 49, 52 (Utah App.1993) (quoting Utah Code Ann. § 77–23–10(2) (1990), authorizing no-knock warrants "upon proof, under oath, that the object of the search may be quickly destroyed . . . or that physical harm may result to any person if notice were given"); *Lobatos v. State,* 875 P.2d 716 (Wyo.1994) (Wyo. Stat. § 35–7–1045 (1988)), we note that Maryland does not statutorily authorize its judicial officers to issue "no-knock" warrants. Indeed, Maryland, by statute, does not in any way prescribe how search warrants are to be executed; unlike many of its sister states, *see,* e.g. CAL. Penal Code § 1531 (2000); FLA. STAT. ANN. § 901.19 (West 1997); OHIO REV. CODE. ANN. § 2935.12 (West 1990); PA. STAT. ANN. § 208 (West 2001), it does not have a "knock and announce" statute. The only statute regulating search and seizure warrants in Maryland when this warrant was issued was codified at Maryland Code (1957, 1996 Replacement Volume) Article 27, § 551.[11] It authorized District and Circuit Court judges to issue search and seizure warrants, established the standard to be applied to their issuance, and prescribed the contents of the application for search warrant and for the search warrant, itself. That statute has been recodified, without substantive change, at Maryland Code (2001) § 1–203 of the Criminal Procedure Article. In pertinent part, § 1–203, as § 551 had done, provides:

"(a) *In general.*—(1) A circuit court judge or District Court judge may issue forthwith a search warrant whenever it is made to appear to the judge, by application as de-

---

**10.** The standard that must be met for issuance of a North Dakota "no-knock" warrant is probable cause, rather than "reasonable suspicion," as the Supreme Court has decreed. *See Richards v. Wisconsin,* 520 U.S. 385, 393, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615, 623 (1997).

**11.** Maryland Rule 4–601(a) addresses the authority to issue a search warrant. It expressly states provides: *"(a) Issuance—Authority.* A search warrant may issue only as authorized by law. Title 5 of these rules, pertaining to evidence, does not apply to the issuance of a search warrant."

scribed in paragraph (2) of this subsection, that there is probable cause to believe that:

"(i) a misdemeanor or felony is being committed by a person or in a building, apartment premises, place, or thing within the territorial jurisdiction of the judge; or

"(ii) property subject to seizure under the criminal laws of the State is on the person or in or on the building, apartment, premises, place, or thing.

"(2) An application for a search warrant shall be:

"(i) in writing;

'(ii) signed and sworn to by the applicant; and

'(iii) accompanied by an affidavit that:

"1. sets forth the basis for probable cause as described in paragraph (1) of this subsection; and

"2. contains facts within the personal knowledge of the affiant that there is probable cause.

"(3) The search warrant shall:

"(i) be directed to a duly constituted police officer and authorize the police officer to search the suspected person, building, apartment, premises, place, or thing and to seize any property found subject to seizure under the criminal laws of the State; and

"(ii) name or describe, with reasonable particularity:

"1. the person, building, apartment, premises, place, or thing to be searched;

"2. the grounds for the search; and

"3. the name of the applicant on whose application the search warrant was issued."

█ Nevertheless, it has long been the law in Maryland that law enforcement officers executing a search and seizure warrant for an individual's private residence must knock and announce their presence before entering and searching. *State v. Lee*, 374 Md. 275, 283–86, 821 A.2d 922, 926–28 (2003) (detailing the history of the knock and announce doctrine in Maryland); *Henson v. State*, 236 Md. 518, 521–22, 204 A.2d 516, 518–19 (1964) (holding that police officer "must give

proper notice of his purpose and authority and be denied admittance before he can use force to enter the premises to be searched"); *Frankel v. State,* 178 Md. 553, 561, 16 A.2d 93, 97 (1940) (recognizing that "an officer in executing a warrant to enter a house, which warrant is valid on its face, may break open the doors if denied admittance, but a demand is necessary prior to breaking doors when the premises are in the charge of someone."); *Goodman v. State,* 178 Md. 1, 8, 11 A.2d 635, 639 (1940) ("A demand is necessary prior to the breaking in of the doors only where some person is found in charge of the building to be searched." (citation omitted)). The reasons for the knock and announce requirement were well stated in *Henson,* which noted that it is rooted in an individual's right to privacy in his or her own home and promotes the principle that "because the dweller in the house would not know the purpose of the person breaking in, unless he were notified, and would have a right to resist seeming aggression on his private property." 236 Md. at 522, 204 A.2d at 519.

The Maryland knock and announce requirement is rooted in the Common Law and is consistent with, and mirrors, Supreme Court precedent. That Court, in *Miller v. U.S.,* 357 U.S. 301, 306–307, 78 S.Ct. 1190, 1194, 2 L.Ed.2d 1332 (1958) noted that, although the knock and announce law applicable in that case was mandated by a federal statute, namely 18 U.S.C. § 3108, which provided that "an officer, executing a search warrant, may break open a door only if, 'after notice of his authority and purpose,' he is denied admittance," the requirement that officers announce their presence before entering premises to be searched springs from the "earliest days, [when] the common law drastically limited the authority of law officers to break the door of a house to effect an arrest." It cautioned that "[t]he requirement of prior notice of authority and purpose before forcing entry into a home . . . should not be given grudging application." 357 U.S. at 313, 78 S.Ct. at 1198, 2 L.Ed.2d at 1340. Relying on *Miller,* in *Sabbath v. U.S.,* 391 U.S. 585, 589–90, 88 S.Ct. 1755, 1758–59, 20 L.Ed.2d 828, 833–834 (1968), the Court held that a California State statute identical to the federal statute prohibiting entry pursu-

ant to a search warrant, unless an officer first knocked and announced his or her presence, was not limited only to when force was used to enter the premises but rather, placing emphasis on the lack of announcement, applied to any entry without announcement. *See Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995) for a detailed discussion of the knock and announce rule, its vintage and importance.

## B.

■ It is now clear that the knock and announce requirement is rooted in the Fourth Amendment reasonableness analysis, *see Wilson,* 514 U.S. at 929, 115 S.Ct. at 1915, 131 L.Ed.2d at 979, the touchstone of which is the " 'reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security; reasonableness depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' " [12] *Pennsylvania v. Mimms,* 434

---

12. Officers must only wait a reasonable amount of time after knocking and announcing their presence before making forcible entry. What is "reasonable" is determined by the facts known to the officers in the particular case. *U.S. v. Banks,* 540 U.S. 31, 38, 124 S.Ct. 521, 526, 157 L.Ed.2d 343, 353 (2003). In drug cases, the Supreme Court has held that 15–20 seconds is a reasonable amount of time because the evidence is readily disposable. *Id.* In reaching that determination, the Supreme Court relied upon similar holdings by several other appellate courts:

> "Several Courts of Appeals have explicitly taken into account the risk of disposal of drug evidence as a factor in evaluating the reasonableness of waiting time. See, *e.g., United States v. Goodson,* 165 F.3d 610, 612, 614 (C.A.8 1999) (holding a 20–second wait after a loud announcement at a one-story ranch reasonable); *United States v. Spikes,* 158 F.3d 913, 925–927 (C.A.6 1998) (holding a 15–to–30– second wait in midmorning after a loud announcement reasonable); *United States v. Spriggs,* 996 F.2d 320, 322–323 (C.A.D.C.1993) (holding a 15–second wait after a reasonably audible announcement at 7:45 a.m. on a weekday reasonable); *United States v. Garcia,* 983 F.2d 1160, 1168 (C.A.1 1993) (holding a 10–second wait after a loud announcement reasonable); *United States v. Jones,* 133 F.3d 358, 361–362 (C.A.5 1998) (relying specifically on the concept of exigency, holding a 15–to–20–second wait reasonable). *See also United States*

U.S. 106, 108–109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 335 (1977), quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904 (1968). In addition, as this Court already had done, *see Henson*, 236 Md. at 523–25, 204 A.2d at 519–20,[13] *Wilson* made clear that the announcement requirement is not rigid; the Fourth Amendment privacy interests must be balanced with the need for effective law enforcement and police safety. The "flexible requirement of reasonableness [, therefore,] should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Wilson*, 514 U.S. at 934, 115 S.Ct. at 1918, 131

---

*v. Chavez–Miranda, 306 F.3d 973, 981–982, n. 7 (C.A.9 2002) ('Banks* appears to be a departure from our prior decisions.... [W]e have found a 10 to 20 second wait to be reasonable in similar circumstances, albeit when the police heard sounds after the knock and announcement'); *United States v. Jenkins*, 175 F.3d 1208, 1215 (C.A.10 1999) (holding a 14–to–20–second wait at 10 a.m. reasonable); *United States v. Markling*, 7 F.3d 1309, 1318–1319 (C.A.7 1993) (holding a 7–second wait at a small motel room reasonable when officers acted on a specific tip that the suspect was likely to dispose of the drugs)."

*Banks*, at 38–39 n. 5, 124 S.Ct. at 526, n. 5, 157 L.Ed.2d at 353 n. 5.

**13.** In that case, the Court held that the entry by breaking and without warning was "reasonable, permissible and legal and the evidence seized was admissible against the appellant," noting "[p]racticalities and exigencies in searches for narcotics require the element of surprise entry, for if opportunity is given all evidence easily may be destroyed during the time required to give notice, demand admittance and accept communication of denial of entry," *Henson v. State*, 236 Md. 518, 523, 204 A.2d 516, 519 (1964), and, quoting, with approval, Kaplan, *Search and Seizure, A No Man's Land in the Criminal Law*, 49 Cal. L.Rev. 474, 502 (1961), that:

"... it would seem that the perfection of small fire-arms and the development of indoor plumbing through which evidence can quickly be destroyed, have made [statutes requiring notice and entry before the use of force to enter] ... a dangerous anachronism. In many situations today ..., a rule requiring officers to forfeit the valuable element of surprise seems senseless and dangerous."

236 Md. at 524, 204 A.2d at 520. This discussion was identified by the Court in *Richards v. Wisconsin*, 520 U.S. 385, 390 n. 1, 117 S.Ct. 1416, 1420 n. 1, 137 L.Ed.2d 615, 622 n. 1 (1997), as a case, predating *Wilson v. Arkansas*, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), that sanctioned a *per se* rule in drug cases to forgo the knock-and-announce requirement, whenever there was "simple probable cause to search a home for narcotics." To that extent, *Henson* is no longer good law.

L.Ed.2d at 982 (1995). The Court, in *Wilson,* declined, however, to enunciate clear rules for when a given set of facts would be sufficient to constitute an articulated exigency warranting an exception to the knock and announce rule, preferring to leave that determination to development by the state courts. Nor did the Court address the timing of the exigency showing. And, although the Court commented on the subject in *Richards v. Wisconsin,* 520 U.S. 385, 396 n. 7, 117 S.Ct. 1416, 1422 n. 7, 137 L.Ed.2d 615, 625 n. 7 (1997),[14] it has not decided it.

As to the latter, as we have seen *supra,* some states have enacted "no-knock" warrant statutes, thus expressly authoriz-

---

14. The Court Stated:

"A number of States give magistrate judges the authority to issue "no-knock" warrants if the officers demonstrate ahead of time a reasonable suspicion that entry without prior announcement will be appropriate in a particular context. See, *e.g.,* 725 Ill. Comp. Stat., ch. 725, §§ 5/108–8 (1992); Neb.Rev.Stat. §§ 29–411 (1995); Okla. Stat., Tit. 22, §§ 1228 (Supp.1997); S.D. Codified Laws §§ 23A–35–9 (1988); Utah Code Ann. §§ 77–23–210 (1995). But see *State v. Arce,* 83 Or.App. 185, 730 P.2d 1260 (1986) (magistrate has no authority to abrogate knock-and-announce requirement); *State v. Bamber,* 630 So.2d 1048 (Fla.1994) (same).

"The practice of allowing magistrates to issue no-knock warrants seems entirely reasonable when sufficient cause to do so can be demonstrated ahead of time. But, as the facts of this case demonstrate, a magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed."

*Richards v. Wisconsin,* 520 U.S. 385, 396 n. 7, 117 S.Ct. 1416, 1422 n. 7, 137 L.Ed.2d 615, 625 n. 7 (1997). But see *Dalia v. U.S.,* 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979), in which, after concluding that covert searches "are constitutional in some circumstances, at least if they are made pursuant to warrant," *id.* at 247, 99 S.Ct. at 1688, 60 L.Ed.2d at 192, the Court observed:

"[i]t is well established that law officers constitutionally may break and enter to execute a search warrant when such entry is the only means by which the warrant effectively may be executed.... Petitioner nonetheless argues that covert entries are unconstitutional for their lack of notice. This argument is frivolous, as was indicated in *Katz v. United States,* 389 U.S. 347, 355 n. 16, 88 S.Ct. 507, 513 n. 16, 19 L.Ed.2d 576 (1967), where the Court stated that 'officers need not announce their purpose before conducting an otherwise [duly] authorized search if such an announcement would provoke the escape of the suspect or the destruction of critical evidence."

*Id.* at 247–48, 99 S.Ct. at 1688, 60 L.Ed.2d at 186–87 (emphasis added).

ing the issuance, by judicial officers, of search and seizure warrants, which permit the police to enter the premises to be searched without knocking and announcing. There is a split of authority among states that do not have "no-knock" warrant statutes as to whether judicial officers may, nevertheless, authorize "no-knock" entries when they issue a search and seizure warrant.

Some courts hold that "no-knock" warrants may be issued only if there is statutory authority to do so. *Parsley v. Superior Court*, 9 Cal.3d 934, 109 Cal.Rptr. 563, 513 P.2d 611, 615 (1973) (holding that the magistrate was without power to pre-authorize violation of knock and announce requirement, observing, "the key to permissible unannounced entry is knowledge of exigent circumstances possessed by police officers at the time of entry"); *State v. Bamber*, 630 So.2d 1048, 1050–51 (Fla.1994) ("No statutory authority exists under Florida law for issuing a no-knock search warrant," citing *Parsley* ); *State v. Eminowicz*, 21 Ariz.App. 417, 520 P.2d 330, 331–32 (1974) (holding that justice of the peace "had no authority, statutory or judicial, to issue a "no-knock" search warrant," observing, "Where the legislature has enacted a statute dealing with execution of a search warrant which is clear and unambiguous on its face, we, as a court may not weigh the reasons for and against such a statute-that is the province of the legislature."); *State v. Arce*, 83 Or.App. 185, 730 P.2d 1260, 1262 (1987) ("The limited exceptions to the *constitutional* knock-and-announce requirement are based on the circumstances as they exist at the time when a warrant is *executed*, and they necessarily involve a violation of Oregon statutory law. A magistrate cannot validly authorize a statutory violation"). *See* 2 Wayne R. LaFave, Search And Seizure: A Treatise On The Fourth Amendment § 4.8(g) (1996), referring to this line of cases as "[t]he prevailing but not unanimous view."

Other courts have reached the opposite result. *Commonwealth v. Scalise*, 387 Mass. 413, 439 N.E.2d 818, 822 (1982) ("we conclude it to be a sound principle that the decision whether to dispense with the requirement of announcement

should be left to judicial officers whenever police have sufficient information at the time of application for a warrant to justify such a request"); *State v. Lien,* 265 N.W.2d 833, 838 (Minn.1978) (identifying as one of four (4) principles governing unannounced entries in execution of search warrants, that police inform the magistrate of circumstances of which they are aware and believe will justify an unannounced entry and "obtain specific authorization for it"); *State v. Johnson,* 168 N.J. 608, 775 A.2d 1273, 1279 (2001); *State v. Henderson,* 245 Wis.2d 345, 629 N.W.2d 613, 622 (2001) (holding that Wisconsin judicial officers are authorized to issue no-knock warrants); *Poole v. State,* 266 Ga.App. 113, 596 S.E.2d 420 422 (2004) (holding that the notice requirement of the knock and announce statute "may be dispensed with ... by a no-knock provision in the warrant or by the presence of exigent circumstances");[15] *White v. State,* 746 So.2d 953, 956 (Miss.App. 1999) (upholding "no-knock" warrant, notwithstanding repeal of statute authorizing "no-knock" warrant, explaining, "Mississippi has no statute which specifically prohibits 'no-knock' warrants, and our case law has never prohibited issuance of 'no-knock' warrants"). *See United States v. Dupras,* 980 F.Supp. 344, 348–49 (D.Mont.1997).

The court in *Henderson,* amplified its reason for authorizing Wisconsin judicial officers to issue "no-knock" warrants in the absence of a statute, explaining:

> " 'there may be occasions in which facts justifying the unannounced entry would be known at the time the warrant is sought, and ... both law enforcement officers and citizens benefit from review of the entry by a neutral magistrate' "

629 N.W.2d at 622, quoting *State v. Cleveland,* 118 Wis.2d 615, 348 N.W.2d 512, 519 (1984). Both Massachusetts and Minnesota require the police at the scene to make a "threshold

---

**15.** Earlier, in *Cox v. State,* 160 Ga.App. 199, 286 S.E.2d 482, 484 (1981), the Georgia appellate court had held that the notice provision was "excused ... where police have *reasonable grounds* to believe that forewarning would lead to the immediate destruction of evidence."

reappraisal of the actual threat," [16] even after a "no-knock" warrant has been issued. *Scalise,* 439 N.E.2d at 823. *See Lien,* 265 N.W.2d at 839. This is so, as the *Scalise* court explained, because:

> "We recognize that the facts existing at the time the warrant is issued may no longer exist at the time the warrant is executed. In those instances, the officers would be required to knock and announce their purpose. The changed circumstances would render ineffective the magistrate's decision that a no-knock entry was justified."

439 N.E.2d at 823.

## IV

### A.

As a threshold matter, the intermediate appellate court addressed an issue that was not directly raised by either party [17] and which, although discussed in *Dashiell v. State,* 143

---

16. The court in *Commonwealth v. Scalise,* 387 Mass. 413, 439 N.E.2d 818, 823 (1982), refers only to "destruction of evidence," perhaps because that was the exception invoked in that case. The reference in *State v. Lien,* 265 N.W.2d 833, 838–39 (Minn.1978) was not so limited.

17. In their Petition for Writ of Certiorari and in their briefs in this Court, the petitioners questioned only the sufficiency of the factual allegations in support of the issuance of the "no-knock" warrant in this case and whether the "good faith" exception to the warrant requirement applied to the execution of that warrant in this case. Specifically, they asked:

> "1. In order to justify issuance of a 'no-knock' warrant, may police allege only that the targets of the warrant were suspected marijuana dealers who kept a large supply of marijuana in the target premises, and that in the affiant's experience, drug dealers use guns and can easily destroy drugs?
> "2. If not, does the good faith exception to Fourth Amendment's warrant requirement apply to the execution of such a warrant?

The petitioners thus, at the very least, seem to assume that judges may issue "no-knock" warrants.

For its part, the State's cross petition for writ of certiorari presented only the question whether, if the "good faith" exception fails, the independent source and/or inevitable discovery doctrines apply to make the evidence admissible.

Md.App. 134, 152–53, 792 A.2d 1185, 1195–96 (2002),[18] has never been decided by a Maryland court, whether "no-knock" warrants-warrants that determine the propriety of a "no-knock" entry-the existence of exigency excusing compliance with the knock and announce requirement—at the time they are issued—are authorized by Maryland law. It concluded that they are.

Noting the "preference that searches be conducted pursuant to warrants issued by judicial officers," *Davis*, 144 Md.App. at 155, 797 A.2d at 90, and proffering the benefits accruing to the officers who obtain a warrant, *i.e.* "(1) the good faith exception to the exclusionary rule, (2) a more deferential standard of review by the suppression court, ... and (3) the presumption that the affidavit does establish probable cause for the search," *id.* at 155–156, 797 A.2d at 91–92 (footnote omitted) (citing and quoting *McDonald v. State*, 347 Md. 452, 467, 701 A.2d 675, 682 (1997) and citing *Herbert v. State*, 136 Md.App. 458, 484–494, 766 A.2d 190, 203–209 (2001)), the intermediate appellate court concluded that "[t]his preference should be equally applicable to "no-knock" warrants." 144 Md.App. at 156, 797 A.2d at 92. Thus, the court instructed:

"If at the time he or she is applying for a search warrant, a law enforcement officer believes that the circumstances under which the warrant will be executed justify dispensing

---

18. The court commented that the warrant in that case was a "no-knock" search warrant, one "utilized where exigent circumstances justify not knocking and announcing." *Dashiell v. State*, 143 Md.App. 134, 152–53, 792 A.2d 1185, 1195–96 (2002), *rev'd*, 374 Md. 85, 821 A.2d 372 (2003). In reversing the Court of Special Appeals, we observed:

"While the Court of Special Appeals identified the type of warrant in this case, the type of warrant has no bearing on the resolution of the basic issue. It is the content of the affidavit requesting the warrant upon which we rely. Our decision in this case should not be construed as an approval of 'no-knock' warrants. We have not in our cases ever resolved whether the issuance of "no-knock" warrants is authorized under Maryland law. We do not resolve that issue in the present case because it is not the type of warrant that is determinative but the information upon which officers act which determines whether a frisk is permitted."

*Dashiell v. State*, 374 Md. at 89, 821 A.2d at 374.

with the knock and announce requirement, the officer should seek no-knock authorization from the warrant issuing judge. If the judge is satisfied that the request for a no-knock entry is reasonable, the judge should include in the warrant a mandate that, in substantially the following form, ... provides:

*'Good cause being shown therefor, the executing law enforcement officers are authorized to enter the premises to be searched without giving notice of their authority and purpose.'*

"Moreover, when they apply for no-knock authorization in a search warrant, law enforcement officers do not have to include in the affidavit the kind of search scene case-specific, particularized circumstances of exigency that they would have to establish during the suppression hearing if they did not have a no-knock provision in the warrant and made the no-knock entry determination on their own."

*Id.* at 156–57, 797 A.2d at 91–92 (footnotes omitted).

It was from this premise that the Court of Special Appeals, in this case, proceeded to the analysis of the factual allegations in support of exigency. Critical to the analysis was the court's view that the quality of "the search scene case-specific, particularized circumstances of exigency" required is different when the "no-knock" authorization is obtained from a judicial officer, it is sought when the warrant is applied for, than when the decision to enter the premises without knocking and announcing is made on the scene, without judicial intervention. As the intermediate appellate court explained:

"Dispensing with the search scene case-specific particularized circumstances of exigency for law enforcement officers seeking no-knock authorization from a judicial officer serves the public interest. It is more beneficial for law enforcement officers to seek no-knock authorization in a search warrant, rather than make their own independent on-the-scene determination of whether to enter without knocking and announcing. If law enforcement officers had to make an identical showing of exigency regardless of whether they

received no-knock authorization in the search warrant, there would be no incentive to seek judicial authorization prior to entering without knocking and announcing."

*Id.* at 157 n. 7, 797 A.2d at 92 n. 7.

Subsequently, in two cases, *See State v. Riley,* 147 Md.App. 113, 807 A.2d 797 (2002) and *Carroll v. State,* 149 Md.App. 598, 817 A.2d 927 (2003), the Court of Special Appeals confirmed this approach. In *Riley,* the issue was the correctness of a ruling by the Circuit Court for Baltimore County invalidating a search and seizure warrant containing a "no-knock" provision because the application for the warrant did not provide sufficient justification for a "no-knock" entry. *Id.* at 117, 807 A.2d at 799–800. More specifically, the question presented involved determining to what deference a decision by a warrant issuing judge is entitled to be given by a reviewing judge; as the intermediate appellate court framed it:

"What will control the outcome of this appeal is the procedural posture in which the set of facts appears. In different postures, the same set of facts may yield diametrically different, albeit equally proper, results. It may make a critical difference whether the judge whose decision is being appealed was 1) properly making a decision on the merits of such exigency or 2) reviewing another judge's prior decision in that regard. It may make a critical difference whether the set of ostensibly exigent circumstances 1) was being advanced to justify a warrantless police decision to make a no-knock entry or 2) was the basis for a judge's decision to issue a no-knock warrant."

*Id.* at 114, 807 A.2d at 798. Reasoning by analogy from the preference for warrants to determine whether a search of a dwelling will be permitted, *see Johnson v. United States,* 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948), and perceiving that "[t]he fundamental policy undergirding the warrant requirement is just as strong with respect to the no-knock increment as it is with respect to the underlying entry into the home itself," the court concluded, "[j]ust as the decision *WHETHER* to cross the threshold should be submit-

ted to a neutral and detached judicial figure, so too should the decision as to *HOW* to cross that threshold." *Id.* at 120–21, 807 A.2d at 802. From this premise, which emphasizes the "great deference" a reviewing court owes the probable cause determination of a judicial officer, *see Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527, 547 (1983), and quoting the portion of *Davis,* 144 Md.App. at 156–57, 797 A.2d at 92, set out *supra,* the court admonished the applicants for search and seizure warrants to advise the issuing judge of all exigencies that would justify a "no-knock" entry and admonished reviewing courts to give "great deference" to the "no-knock" determinations of the warrant issuing judge, that is,

> " 'the suppression hearing court should uphold that provision as long as the warrant application provided the issuing judge with a substantial basis for concluding that there existed a reasonable suspicion that, under the circumstances in which the warrant was to be executed, the knock and announce requirement would be dangerous to the executing officers or would result in the destruction of the items described in the search warrant.' "

*Id.* at 121–22, 807 A.2d at 802–03, quoting *Davis,* 144 Md.App. at 152, 797 A.2d at 84.

The issue addressed in *Carroll* was whether the failure to seek a "no-knock" warrant foreclosed the right of the police to execute the warrant using a "no-knock" entry. Building upon *Davis* and *Riley,* the intermediate appellate court held that a "no-knock" entry to execute a search and seizure warrant was invalid where the police "purposely did not seek a 'no-knock' warrant," 149 Md.App. at 601, 817 A.2d at 929, and, at the time of the entry, the information known to the police was the same as that which they had when they applied for the warrant. *Id.* at 611–14, 817 A.2d at 935–36. The court explained:

> "What is absent is the absolute lack of material change in the facts or circumstances surrounding the execution of the warrant between the time it was issued and served. In other words, the officers serving the warrant had no 'partic-

ularized knowledge.' Sergeant Bender's testimony clearly demonstrated that the 'particularized knowledge' was already known at the time they secured the warrant. No additional facts giving rise to a sudden emergency were shown other than what they previously had learned from the officers who secured the warrant, namely Detective Verderaime. ... Moreover, the record indicates that the officers did not witness any suspicious activities or events while surveilling Carroll's residence that would lead them to believe that the climate had changed and that would give rise to exigent circumstances. Thus, the officers serving the warrant based their decision not to knock and announce on the information previously given to them by Detective Verderaime that was known at the time they secured the search warrant, rather than on exigent circumstances that may have arisen at the time they executed the warrant.... Under these circumstances, there was no evidence of exigent circumstances that could possibly eliminate the constitutional requirement to knock and announce." ·

*Id.* at 611–13, 817 A.2d at 935–36.

### B.

We reject the rule implicitly, if not expressly, enunciated by the Court of Special Appeals in *Davis, Riley* and *Carroll*, requiring applicants for search and seizure warrants to obtain pre-entry authorization for a "no-knock" entry, to obtain judicial approval of the method of entry in addition to the authorization of the search. The propriety of a "no-knock" entry, while certainly related to the question of the propriety of authorizing a search of the premises, is a different issue, both temporally and analytically. Different criteria inform the decision of the form of entry than inform the analysis of whether, or not, there is probable cause to search in the first place. In *Parsley, supra,* 109 Cal.Rptr. 563, 513 P.2d at 614, the Supreme Court of California explained:

"[I]nformation providing probable cause for the issuance of a search warrant is of a different nature and source than information justifying unannounced entry. While a search

warrant must necessarily rest upon previously obtained information, unannounced entry is excused only on the basis of exigent circumstances existing at the time an officer approaches a site to make an arrest or execute a warrant."
See also *Dalia v. U.S.*, 441 U.S. 238, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979).

In *Dalia*, the Supreme Court granted certiorari to consider two questions: ". . . may courts authorize electronic surveillance that requires covert entry into private premises for installation of the necessary equipment? . . . must authorization for such surveillance include a specific statement by the court that it approves of the covert entry?" *Id.* at 241, 99 S.Ct. at 1685, 60 L.Ed.2d at 182. The petitioner in that case had been convicted of conspiracy to steal an interstate shipment of goods, partly based on evidence obtained as a result of wiretaps on his office phones. Surveillance developed probable cause to believe that he was involved in the conspiracy, and FBI agents obtained a warrant for the wiretaps. *Id.* at 243, 99 S.Ct. at 1685, 60 L.Ed.2d at 184. Although the wiretap warrant expressly identified the phones to be tapped, there was no clause authorizing covert entry into the office to place the taps. *Id.* at 246, 99 S.Ct. at 1687, 60 L.Ed.2d at 185. The petitioner's motion to suppress the evidence obtained pursuant to the warrant was denied and that ruling was affirmed on appeal. In the Supreme Court, he argued, with respect to the second question,

"if covert entries are to be authorized . . ., the authorizing court must explicitly set forth its approval of such entries before the fact. In this case, as is customary, the court's order constituted the sole written authorization of the surveillance of petitioner's office. As it did not state in terms that the surveillance was to include a covert entry, petitioner insists that the entry violated his Fourth Amendment privacy rights."

*Id.* at 254–255, 99 S.Ct. at 1692, 60 L.Ed.2d at 191.

The Court did not agree. Rather, pointing to the fact that the Fourth Amendment warrant clause requires only three

things, namely: "First, warrants must be issued by neutral and disinterested magistrates.... Second, those seeking warrants must demonstrate to the magistrate their probable cause to believe that 'the evidence sought will aid in a particular apprehension or conviction' for a particular offense.... Finally, 'warrants must particularly describe the things to be seized' as well as the place to be searched," *id.* at 255, 99 S.Ct. at 1692, 60 L.Ed.2d at 191 (citations omitted), the Court noted that authorization of the method of entry is not specified as a warrant requirement:

> "[n]othing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the three requirements discussed above, search warrants also must include a specification of the precise manner in which they are to be executed. On the contrary, *it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by a warrant*-subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.' "

*Id.* at 257, 99 S.Ct. at 1693, 60 L.Ed.2d at 193 (emphasis added). It added:

> "[o]ften in executing a warrant the police may find it necessary to interfere with privacy rights not explicitly considered by the judge who issued the warrant. For example, police executing an arrest warrant commonly find it necessary to enter the suspect's home in order to take him into custody, and thereby impinge on both privacy and freedom of movement. *See e.g., United States v. Cravero,* 545 F.2d 406, 421 (C.A.5 1976) (on petition for rehearing). Similarly, officers executing search warrants on occasion, must damage property in order to perform their duty. *See, e.g., United States v. Brown,* 556 F.2d 304, 305 (C.A.5 1977), *United States v. Gervato,* 474 F.2d 40, 41 (C.A.3), cert denied, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973))
> "It would extend the Warrant Clause to the extreme to require that, whenever it is reasonably likely that Fourth Amendment rights may be affected in more than one way,

the court must set forth precisely the procedures to be followed by the executing officers. Such an interpretation is unnecessary, as we have held—and the Government concedes—that the manner in which a warrant is executed is subject to later judicial review as to it's reasonableness. *See Zurcher v. Stanford Daily,* 436 U.S. 547, 559–560, 98 S.Ct. 1970, 1978–1979, 56 L.Ed.2d 525 (1978)."

*Id.* at 257–258, 99 S.Ct. at 1693–94, 60 L.Ed.2d at 193.

■ The decision as to how entry is to be made balances, at the least, the privacy interest of the individual, the need to protect the safety of police officers and the need to preserve evidence. *See Richards,* 520 U.S. at 387, 117 S.Ct. at 1418, 137 L.Ed.2d at 620. The probable cause analysis, on the other hand, while ultimately concerned with the privacy issue, is more fact based; it is concerned more specifically with the probability of the item or items that are the subject of the inquiry being in the place to be searched. *Id.* at 389, 117 S.Ct. at 1419, 137 L.Ed.2d at 621. Thus, what the Supreme Court pointed out in *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436, 439–440 (1948), where the issue was probable cause, is entirely logical, absent exigent circumstances: deference to the determination of a detached warrant-issuing judge rather than a "zealous" officer engaged in the often-adrenaline charged task of "ferreting out crime," is appropriate, because it supports the goal of encouraging officers to seek warrants. When the issue concerns the manner of entry, however, probable cause for the search already having been established, the appropriate inquiry, and thus the decision to be reviewed, is whether the form of entry used was reasonable in light of the facts as known to the officer at the time of the entry. *Ker v. California,* 374 U.S. 23, 40–41, 83 S.Ct. 1623, 1633–34, 10 L.Ed.2d 726, 742 (1963) ("In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police"); *Parsley,* 109 Cal.Rptr. 563, 513 P.2d at 615 ("the key to permissible unannounced entry is the knowledge of exigent

circumstances possessed by police officers at the time of entry. Thus, from the viewpoint of a court reviewing justification for an unannounced entry after the fact, a warrant authorizing such action adds nothing."); *Bamber,* 630 So.2d at 1050–51.

Moreover, the factors and circumstances bearing on the method of effecting entry to execute a search and seizure warrant may not be, and often are not, static; the facts bearing on the propriety of a "no-knock" entry, known to the judicial officer when the warrant was issued may well change and be different, perhaps rendering the judicial officer's finding on the question of exigency inappropriate when the warrant is executed. This is so whatever the magistrate's decision, whether the search warrant authorized a "no-knock" entry or refused to authorize such an entry. That deficiency of the "no-knock" warrant has been recognized and explained. In *Parsley,* explaining why the reasonableness of an entry to execute a search and seizure warrant must be judged at the time of the entry, itself, the court said:

> "Facts existing at the time of obtaining a warrant may no longer exist at the time of entry. Such an emergency, therefore, can be judged only in light of circumstances of which the officer is aware at the latter moment. Previously obtained information may at that time be taken into account in determining the necessity of dispensing with ordinary announcements (*People v. Dumas* (1973) 9 Cal.3d 871, 109 Cal.Rptr. 304, 512 P.2d 1208), but a more significant factor in this decision is perception and knowledge the officer acquires on the scene immediately prior to effecting entry. For this reason, earlier judicial authorization would be largely inappropriate in the context of unannounced entry and, thus, clearly cannot be considered a constitutional requirement."

109 Cal.Rptr. 563, 513 P.2d at 614.

The Supreme Court commented on this very point in *Richards,* pointing to the facts of that case and cautioning that, "a magistrate's decision not to authorize a no-knock entry should not be interpreted to remove the officers' authority to exercise

independent judgment concerning the wisdom of a no-knock entry at the time the warrant is being executed." 520 U.S. at 396 n. 7, 117 S.Ct. at 1422 n. 7, 137 L.Ed.2d at 625 n. 7. That Court has also made clear that officers requesting a warrant are not constitutionally required to set forth the anticipated means for execution of that warrant, even when they know beforehand that unannounced or forced entry likely will be necessary. *Dalia, supra,* 441 U.S. at 257, n. 19, 99 S.Ct. at 1693 n. 19, 60 L.Ed.2d at 192 n. 19, citing 2 W. LaFave, Search and Seizure 140 (1978). *See U.S. v. Hernandez,* 252 F.Supp.2d 1190, 1193 (D.Kan.2003) (the determination must always be made at the time the officers entered the house).

Courts that authorize "no-knock" warrants have likewise commented and so held. *See Scalise, supra,* 439 N.E.2d at 823; *Lien, supra,* 265 N.W.2d at 839. Citing *Lien,* the *Scalise* court put it thus:

> "We recognize that the facts existing at the time the warrant is issued may no longer exist at the time the warrant is executed. In those instances, the officers would be required to knock and announce their purpose. The changed circumstances would render ineffective the magistrate's decision that a no knock entry was justified. 26 Hastings L. J., *supra* at 285. Thus, the police officers at the scene are required to make a threshold reappraisal of the actual threat of the destruction of evidence."

█ Because whatever facts officers may know and the warrant issuing judge may find at the time of the application for the search warrant, the possibility of changed circumstances requires that there be a re-evaluation of the propriety of a no-knock entry at the time of the search. We come out on the side of those courts that, in the absence of valid statutory authority, refuse to authorize a judicial officer to make an advance determination of exigency. We hold that a judicial officer in Maryland, under current Maryland law, may not issue a "no-knock" warrant. Rather, the propriety of a "no-knock" entry will be reviewed and determined on the basis

of the facts known to the officers at the time of entry, rather than at the time of the application for the warrant.

This holding is consistent with other search and seizure law situations, in which the competing interests of officer safety, evidence preservation and other exigencies existing at the time of the encounter are balanced against the defendant's privacy interest. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)(holding that police officers may pat down the outer clothing of a suspect's clothes when they have reasonable suspicion at the time they stop the suspect that he or she is involved in criminal activity and has weapons that might compromise officer safety); *Maryland v. Buie,* 494 U.S. 325, 334, 110 S.Ct. 1093, 1098, 108 L.Ed.2d 276, 286 (1990) (holding that police officers may execute a limited sweep in conjunction with a home arrest, when the *arresting officer* has reasonable articulable suspicion that "the area to be swept harbors an individual posing a danger to those on the arrest scene.") (emphasis added); *Michigan v. Long* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (holding that the search of a passenger compartment of automobile, limited to those areas in which weapons may be placed or hidden, is permissible if *police officer* possesses reasonable belief based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant ... officers in believing that suspect is dangerous and may gain immediate control of weapons") (quoting *Terry,* 392 U.S., at 21, 88 S.Ct., at 1880, 20 L.Ed.2d at 906).

## V.

We turn now to a determination of whether the "no-knock" entry by Officers O'Ree and Brackus was justified by existing and articulated exigent circumstances. We do so, in this case, by reviewing the affidavit submitted in support of the search and seizure warrant. This is necessary in this case because there is no evidence as to the circumstances at the scene and that is where the trial court, the intermediate appellate court and, indeed, the parties looked to determine whether there were sufficient facts to show the need for a "no-knock" war-

rant. As we have seen, as relevant to the resolution of the case *sub judice,* the affidavit sets out the officers' experience and their conclusion from that experience that participants in the drug trade often are dangerous and carry weapons and that drugs are easily and quickly destroyed if entry onto the premises is delayed or stalled, the fact that large amounts of drugs had been seized as a result of information supplied by one of their sources, that several people resided in the dwelling, and that the petitioner Adams had three prior juvenile arrests for controlled dangerous substances.

Aside from their conclusions based on their general experience, Officers O'Ree and Brackus cited no observations or facts in their affidavit that indicated that the petitioners were inherently dangerous. With the exception of the connection they posited existed between drugs and weapons, their affidavit did not allege that the petitioners were observed carrying, or were known to carry, a weapon. Neither was there reason given in that affidavit, again excepting the link provided by the officers' experience, to believe that there were weapons inside the subject premises. Moreover, the officers did not present any facts whatsoever that tended to indicate, much less prove, that the petitioners would react violently, attempt to flee when confronted by the police, or attempt to dispose of, or destroy, the evidence. To be sure, the affidavit did indicate that petitioner Adams had a criminal history, but, as indicated, it consisted only of juvenile drug arrests.

The motions judge and the *Davis* court both credited the officers' experience and, applying the warrant preference, found a sufficient justification for the issuance of a "no-knock" warrant. That justification was the link that their combined experiences provided between drug traffickers, weapons, the ease with which drugs may be destroyed and the tendency of drug traffickers to dispose of evidence.

*Richards, supra,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615, addressed a similar issue and, therefore, is quite relevant. There, the Court considered a ruling by the Wisconsin Supreme Court holding that "police officers are never *required,*

to knock and announce their presence when executing a search warrant in a felony drug investigation." *Id.* at 387–88, 117 S.Ct. at 1417, 137 L.Ed.2d at 620. The Court reversed, rejecting blanket exceptions to the knock and announce requirement. *Id.* at 388, 117 S.Ct. at 1419, 137 L.Ed.2d at 620. Although it acknowledged that knocking and announcing in felony drug cases frequently might expose officers to physical violence or might lead to the destruction of evidence, the Court refused to "dispense ... with [a] case-by-case evaluation of the manner in which a search was executed," *id.* at 392, 117 S.Ct. at 1420, 137 L.Ed.2d at 623, noting two serious concerns presented by such a blanket exception:

"First the exception contains considerable overgeneralization. For example, while drug investigation frequently does pose special risks to officer safety and the preservation of evidence, not every drug investigation will pose these risks to a substantial degree. For example, a search could be conducted at a time when the only individuals present in a residence have no connection with the drug activity and thus will be unlikely to threaten officers or destroy evidence. Or the police could know that the drugs being searched for were of a type or in a location that made them impossible to destroy quickly. In those situations, the asserted governmental interests in preserving evidence and maintaining safety may not outweigh the individual privacy interests intruded upon by a no-knock entry. Wisconsin's blanket rule impermissibly insulates these cases from judicial review.

"A second difficulty with permitting a criminal-category exception to the knock-and-announce requirement is that the reasons for creating an exception in one category can, relatively easily, be applied to others. Armed bank robbers, for example, are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a *per se* exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of

the Fourth Amendment's reasonableness requirement would be meaningless."

*Id.* at 394, 117 S.Ct. at 1421, 137 L.Ed.2d at 624. The Court concluded:

"Thus, the fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of the reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement."

*Id.* It further clarified:

"In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. *Maryland v. Buie,* 494 U.S. 325, 337, 110 S.Ct. 1093, 1099–1100, 108 L.Ed.2d 276 (1990) (allowing a protective sweep of a house during an arrest where the officers have 'a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene'); *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968) (requiring a reasonable and articulable suspicion of danger to justify a patdown search). This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged."

*Id.* at 394–95, 117 S.Ct. at 1421–22, 137 L.Ed.2d at 624.[19]

That several persons resided in the subject premises and the petitioner Adams had three juvenile drug arrests, while specific to this case and these defendants, added nothing to the relevant questions, whether the petitioners would constitute a danger or whether they, or the others residing in the premises, would destroy the contraband. Neither does the fact that the confidential source's information resulted in the seizure of large amounts of drugs and weapons address the relevant questions, because we are not informed of the circumstances surrounding those seizures. To the extent that the inference to be drawn is that the subject operation is a large one, that fact would seem to undermine the argument that the risk of destruction of the drugs was great. And, it does not address the dangerousness of the petitioners, except, that is, by reference to the generalization, which is, in turn, the product of the officers' experience.

It is, then, in truth, only the officers' experience that provides any support for the issuance of a "no-knock" warrant and, therefore, the finding of the necessary exigency in this case. The trial court said as much:

> "crediting the affiants' experience which involves hundreds of narcotics arrests, extensive training, and considerable experience in narcotics law enforcement, I cannot conclude that their conclusion with respect to the likeliness of firearms on the property is an irrational one."

So, too, did the *Davis* court. 144 Md.App. at 148, 797 A.2d at 87. To use the officers' experience to establish a reasonable suspicion that the petitioners, because they are drug dealers, have, carry and use firearms and are likely to have, carry, and use them in this case and that, in the event of an announced entry to execute the search and seizure warrant, the drugs in

---

19. The *Richards* Court ultimately affirmed the Wisconsin Supreme Court decision on the basis that the petitioner's reaction to the presence of officers at the hotel door, provided sufficient support of the officers' concern that the petitioner might destroy evidence. *Richards,* 520 U.S. at 396, 117 S.Ct. at 1416, 137 L.Ed.2d at 625.

this case could, and would likely, be destroyed is to do what the *Richards* Court forbids, to give effect to a blanket exception to the knock and announce requirement on the basis only of overgeneralizations. As *Richards* points out, see 520 U.S. at 392–93, 117 S.Ct. at 1421, 137 L.Ed.2d at 623, such overgeneralizations may be applied to every drug investigation. Moreover, the need and reason for the exception "can, relatively easily, be applied" to many other categories of crimes. *Id.* at 393, 117 S.Ct. at 1421, 137 L.Ed.2d at 623. We hold that the entry in this case was not justified by existing and articulated exigency.

Other courts presented with similar facts have reached the same conclusion. *See Poole v. State*, 266 Ga.App. 113, 596 S.E.2d 420, 424 (2004) (testimony of a "possibility" of officers peril or immediate destruction of the evidence based only on the fact that someone looked out a window and then left the window "is simply inadequate to establish reasonable grounds to believe that, *in this case*, forewarning would have had that effect); *State v. Nelson*, 817 So.2d 158, 165, (La.App.2002) (information provided by confidential informant that defendant was in possession of a substantial amount of drugs and was selling the drugs from the residence insufficient); *Com. v. Jimenez*, 438 Mass. 213, 780 N.E.2d 2, 7–8 (2002) (dispensing with knock and announce requirement on the basis of allegations "[t]hat it is common today for drug dealers to be in possession of firearms," and that firearms are "commonly confiscated" during searches for drugs is to adopt a per se rule, that safety concerns are demonstrated merely by the fact that the search is for drugs); *Garza v. State*, 632 N.W.2d 633, 638 (Minn.2001) ("While the showing required to justify an unannounced entry is not high . . .", general terms that those involved in the drug trade tend to use violence and destroy evidence is insufficient without a "factual nexus to particularized facts of dangerousness, futility or destruction of evidence related to the search of respondent's residence."); *State v. Johnson*, 135 N.M. 615, 92 P.3d 61, 65 (App.2004) (no-knock entry must be justified on a case-by-case basis, by a particularized showing of exigent circumstances, even when a drug

manufacturing facility is alleged); *State v. Utvick*, 675 N.W.2d 387, 396 (N.D.2004) (averment, "your Affiant is aware that Ryan Utvick is usually accompanied by a group of people inside motel rooms, and if, Law Enforcement would have to knock and announce their presence, those people could pitch their illegal drugs aside or flush potential evidence down a sink or toilet. Your Affiant has seen this on other search warrants and did see this happen ... on June 1, 2002, where Ryan Utvick was listed on the room registration card," insufficient); *State v. King*, 136 Ohio App.3d 377, 736 N.E.2d 921, 924 (1999) (averment that "[i]n the experience of affiant, persons who traffic in illegal drugs frequently keep weapons, such as firearms, on or about their persons, or within their possession, for use against law enforcement officials, as well as other citizens," insufficient support for "no-knock" warrant); *Brown v. State*, 115 S.W.3d 633, 639 (Tex.App.2003) (holding officer's general statement "that if they did not knock and announce, it was because they were concerned about destruction of the evidence" was insufficient); *Ballard v. State*, 104 S.W.3d 372, 383 (Tex.App.2003) (same); *U.S. v. Tavares*, 223 F.3d 911, 917 (8th Cir.2000) (bare conclusion in the warrant application that unidentified suspects might be involved in violent crimes does not establish the dangerousness of the search).

## VI.

The Supreme Court announced, in *U.S. v. Leon*, 468 U.S. 897, 920–921, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677, 697 (1984), an exception to the general rule that evidence seized pursuant to an invalid warrant is subject to the exclusionary rule. The Court held, instead, that evidence is to be admissible, if the officer relied, in good faith, on a warrant obtained from a judge or magistrate and acted within its scope. *Id.* That also is the law in Maryland. *See McDonald v. State*, 347 Md. 452, 467–468, 701 A.2d 675, 682 (1997) ("[E]vidence seized under a warrant subsequently determined to be invalid may be admissible, if the executing officers acted in objective good faith with reasonable reliance on the warrant."); *Connelly v.*

*State,* 322 Md. 719, 729, 589 A.2d 958, 963 (1991). There is, however, no *per se* rule. Whether such evidence is admissible must be determined on a "case-by case basis and [suppression should] only [be ordered] in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Leon,* 468 U.S. at 918, 104 S.Ct. at 3418, 82 L.Ed.2d at 695. The purposes of the exclusionary rule are furthered, the Court instructed, "if it can be said that the law enforcement officer had knowledge, or may properly be charged with the knowledge, that the search was unconstitutional under the Fourth Amendment," *id.* at 919, 104 S.Ct. at 3419, 82 L.Ed.2d at 696 (citing *Illinois v. Gates,* 462 U.S. 213, 260–61, 103 S.Ct. 2317, 2344, 76 L.Ed.2d 527 (1983)), and, therefore, had no "reasonable grounds for believing that the warrant was properly issued." *Id.* at 923, 104 S.Ct. at 3420, 82 L.Ed.2d at 698. Four such situations have been identified:

"[1] if the magistrate or judge in issuing the warrant, was misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard for the truth . . . [; 2] in cases where the issuing magistrate wholly abandoned his judicial role . . . [so that] no reasonably well trained officer should rely on the warrant . . . [; 3 when] an officer [fails to] manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,' . . . [; or 4 when] 'a warrant [is] so facially deficient—*i.e.,* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume [the warrant] to be valid."

*Leon,* 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 698–699 (internal citations omitted). *See also McDonald v. State,* 347 Md. 452, 468–69, 701 A.2d 675, 683 (1997) (internal citations omitted) (quoting *Connelly* 322 Md. at 729, 589 A.2d at 963 in turn quoting *Leon,* 468 U.S. at 923, 104 S.Ct. at 3421).

In the present case, relying on *Leon,* the State argues that, even if this court finds that the warrant application did not state an exigency with sufficient particularity to support a "no-

knock" entry, the evidence obtained as a result of the search should nonetheless be admitted under the good faith exception to the exclusionary rule. It urges, in other words, this Court to extend the good faith exception to include not only those situations in which officers rely, in good faith, on warrants determined to lack probable cause, but also those, as in this case, in which they rely on the warrant's authorization of a "no-knock" entry.

The State reasons that, because the police officers submitted an affidavit in support of their application for the search warrant that stated that the officers would "attempt to gain entry by the rush or No–Knock forced entry," the magistrate authorized such an entry when the search warrant incorporated the affidavit by reference. Reliance on a "no-knock" warrant, it argues, is, therefore, akin to reliance on a general warrant lacking in probable cause. In this case, the State maintains, "[a] review of the information in the affidavit shows that the facts supporting an unannounced entry were not so sparse that reliance on the warrant was 'entirely unreasonable.'" The State relies on cases in which sister courts have applied the good faith exception to "no-knock" warrants. *E.g., United States v. Tisdale,* 195 F.3d 70, 73–74 (2nd Cir.1999), *United States v. Hawkins,* 139 F.3d 29, 32 (1st Cir.), *cert. denied,* 525 U.S. 1029, 119 S.Ct. 566, 142 L.Ed.2d 472 (1998); *United States v. Carter,* 999 F.2d 182, 184–87 (7th Cir.1993); *United States v. Moland,* 996 F.2d 259, 261 (10th Cir.1993) *cert. denied,* 510 U.S. 1057, 114 S.Ct. 722, 126 L.Ed.2d 686 (1994); *United States v. Moore,* 956 F.2d 843, 851 (8th Cir. 1992), 956 F.2d 843, 851 (8th Cir.1992); *United States v. Gonzalez,* 164 F.Supp.2d 119, 125 (D.Mass.2001); *United States v. Brown,* 69 F.Supp.2d 518, 520–21 (S.D.N.Y.1999); *United States v. Tavarez,* 995 F.Supp. 443, 448–49 (S.D.N.Y. 1998); *State v. Van Beek,* 591 N.W.2d 112, 118–19 (N.D.1999); and *State v. Eason,* 245 Wis.2d 206, 629 N.W.2d 625, 650 (2001).[20]

---

**20.** As indicated, in 1997, the Supreme Court made clear that "blanket exceptions" to the knock and announce requirement, based on general-

We need not decide the applicability of the good faith exception to "no-knock" warrants. As we have held that such

---

izations about the subject of the investigation or the substance sought, are not permitted and that exceptions must be made on the basis of showings particularized as to place, defendant and evidence. *Richards* at 520 U.S. at 395, 117 S.Ct. at 1422, 137 L.Ed.2d at 625. Subsequently, the Court of Special Appeals, in *Lee v. State,* 139 Md.App. 79, 89, 774 A.2d 1183, 1189 (2001), *aff'd,* 374 Md. 275, 821 A.2d 922 (2003) reiterated and applied that holding. *See Wynn v. State,* 117 Md.App. 133, 162 n. 5, 699 A.2d 512, 526 n. 5 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998). In *Lee,* the information found insufficient consisted of two (2) instances of observing the defendant selling a small amount of drugs and a trooper's statement of why he entered the premises without knocking and announcing because it was a cocaine case. Id. at 90, 774 A.2d at 1190. *See also State v. Riley,* 147 Md.App. 113, 117, 807 A.2d 797, 800 (2002) (noting that the warrant application listed the defendant's three handgun convictions and previous assault and battery charge to support suspicion that officers entering the premises might be in harm's way). Consequently, it is not at all clear that the officers were acting in good faith when proffering the clearly inadequate basis for the warrant.

Three of the cases on which the State relies, *United States v. Moore,* 956 F.2d 843 (1992), *United States v. Carter,* 999 F.2d 182 (7th Cir. 1993) and *United States v. Moland,* 996 F.2d 259 (10th Cir.1993), were decided prior to *Richards.* Although *United States v. Gonzalez,* 164 F.Supp.2d 119 (D.Mass.2001) and *State v. Van Beek,* 591 N.W.2d 112 (N.D.1999), were decided post-*Richards,* the warrants in those cases were issued prior to *Richards.* Therefore, the courts decided that, notwithstanding the absence of particularized facts, the officers' reliance on those no-knock warrants was reasonable at the time. The other cases are distinguishable; in those cases, characterized as "close calls," the officers alleged more facts showing exigency than in the case *sub judice: United States v. Tisdale,* 195 F.3d 70, 73 (2nd Cir.1999) (alleging that the defendant was in the possession of drugs packaged in readily disposable form and that, in fact, the defendant had, on a prior occasion, dropped a bag out the window to the informant); *United States v. Rivera,* 2000 WL 761976, *2 (D.Maine 2000) (alleging that an informant reported that the Defendant and his associates might be armed and that the drugs, heroin, was of such a small quantity that it could be easily disposed"); *United States v. Brown,* 69 F.Supp.2d 518, 519 (S.D.N.Y.1999) (alleging that the reliable informant reported that the defendant kept five or six guns in his apartment, including a sawed-off shotgun and a TEC–9 pistol); *United States v. Tavarez,* 995 F.Supp. 443, 445 (S.D.N.Y.1998) (alleging that the reliable informant reported that the defendants stored only a small amount of cocaine in plastic baggies within easy access on the top of a bureau in a bedroom); *State v. Eason,* 245 Wis.2d 206, 629 N.W.2d 625, 628 (2001) (alleging that the suspects believed to reside at the premises to be searched had previous arrests for aggravated assault and obstruction).

warrants are not authorized under Maryland law and exigency must be determined at the time of the entry, whether or not the warrant purports to authorize such entry, we hold that there is, and can be, no predicate determination on the basis of which the police could, and did, rely.

JUDGMENTS OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.